**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Robert Booker JONES, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 7, 2002.
Filed June 9, 2003.

Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for Commonwealth, appellant.

Angela R. Carsia, Pittsburgh, for appellee.

Before: DEL SOLE, P.J., McEWEN, P.J.E., HUDOCK, JOYCE, STEVENS, TODD, KLEIN, BENDER and GRACI, JJ.

HUDOCK, J.

¶ 1 This is an appeal from an order that partially granted and partially denied the Commonwealth's motion *in limine*.[1] We reverse in part.

¶ 2 Robert Booker Jones (Appellee) was charged with one count each of rape, involuntary deviate sexual intercourse and aggravated assault.[2] The charges stem from an incident that allegedly occurred on December 16, 1999. On October 4, 2000, the trial court convened a hearing to consider several pretrial issues. On that date, the Commonwealth moved to amend the information to add charges of criminal attempt and simple assault. The parties stipulated to the DNA test result report. A discussion followed concerning Appellee's alleged prior sexual activity with the complainant. Defense counsel evinced the intention to introduce evidence of the complainant's prior convictions for prostitution and the fact that she was on probation for prostitution at the time of the assaults alleged here.

¶ 3 Because consent is an issue in this case, the trial court ruled that evidence of Appellee's prior sexual activity with the complainant would be admissible at trial. N.T., 10/4/00, at 7. The Commonwealth objected and the hearing was continued to allow further investigation and so that de-

fense counsel could prepare a written notice of intention to offer evidence of the complainant's prior sexual conduct. On October 10, 2000, counsel filed a notice pursuant to subsection (b) of Pennsylvania's Rape Shield Law, 18 Pa.C.S.A. section 3104. (The provision in question is sometimes referred to as the Rape Shield Statute.)

¶ 4 The trial court conducted a two-part hearing on October 11–12, 2000. Appellee's counsel explained that the defense theory is that the complainant is a prostitute and that the acts underlying the charges against Appellee occurred in the course of voluntary sexual activity for hire. The Commonwealth moved to exclude all evidence of prostitution. The trial court ruled that the complainant's prior sexual history with Appellee was admissible but evidence of her sexual conduct with third parties prior to the alleged rape must be excluded. Thus, the complainant's prostitution convictions prior to the date of the alleged assault were ruled inadmissible. But the trial court determined that one of her convictions was predicated on acts that occurred after the rape alleged against Appellee, and that this would be admissible at trial even though it involved a third party.

¶ 5 The trial court acknowledged that women in the complainant's position are very vulnerable to attack. N.T., 10/12/00, at 10. The trial court explicitly stated that an allegation of prostitution is not a defense to a rape charge. *Id.* But the trial court also pointed out that the necessity of protecting the rights of the complainant must be balanced against the constitutional

---

1. The Commonwealth has certified that the order in question substantially handicaps the prosecution pursuant to Rule of Appellate Procedure 311(d).

2. 18 Pa.C.S.A. §§ 3121, 3123, and 2702(a)(1), respectively.

mandate that a defendant is entitled to a fair trial. *Id.* at 11.

¶ 6 The prosecutor immediately informed the trial court the evidentiary ruling posed a "substantial handicap" and stated that an interlocutory appeal would be taken as of right. However, the prosecutor also asked the trial court to certify the matter as a controlling question of law on which substantial grounds exist for a difference of opinion. The trial court agreed and Appellee did not object. *Id.* at 14. On October 27, 2000, the trial court certified that its evidentiary ruling implicates a controlling question of law as to which there exists "substantial grounds for difference of opinion." Trial Court Order, 10/27/00. The trial court indicated an immediate appeal "may materially advance the ultimate termination" of the matter. *Id.* Therefore, the trial court stayed the proceedings against Appellee and granted the Commonwealth permission to appeal the adverse pre-trial ruling. *Id.*

¶ 7 On November 1, 2000, the Commonwealth filed its timely notice of appeal. In addition to its petition seeking a permissive appeal under section 702(b) of Title 42, the Commonwealth also filed a certification pursuant to Rule of Appellate Procedure 311(d) stating that the interlocutory appeal was taken as of right, in good faith, from a trial court ruling that substantially handicaps and/or terminates its prosecution of Appellee. *See* Certification, 11/1/00. The trial court entered an order requiring a Rule 1925(b) statement to be filed and the Commonwealth complied. We dismissed the Commonwealth's petition for permission to appeal stating "the validity of the current appeal in this case is not affected by the order." Order, 12/19/00. The appeal subsequently was certified for argument *en banc* to address the question of whether this Court has jurisdiction pursuant to Rule 311(d).

¶ 8 The issues presented are: (1) whether the Superior Court has jurisdiction over the appeal; and (2) whether the trial court erred in ruling that the complainant's conviction for prostitution is admissible when that conviction is predicated on acts committed with a person other than Appellee after the alleged rape. As noted, the trial court explicitly found that its ruling on the Commonwealth's motion *in limine* substantially handicaps the prosecution of this case. N.T., 12/12/00, at 14. Furthermore, Appellee does not claim that the Commonwealth has proceeded in bad faith or that this appeal is frivolous. Thus, the question of whether the Commonwealth has, in fact, proceeded in good faith has not been raised and is not before us.

■ ¶ 9 A challenge to the authority of an appellate court to conduct review of a pre-trial order is a jurisdictional matter. *Commonwealth v. Rosario,* 419 Pa.Super. 481, 615 A.2d 740, 742 (1992), *aff'd,* 538 Pa. 400, 648 A.2d 1172 (1994). The Commonwealth contends that Rule of Appellate Procedure 311(d) confers jurisdiction over an appeal from an interlocutory pre-trial order which denies a motion *in limine* so long as the prosecutor is prepared to certify that the order substantially handicaps or terminates the prosecution. Appellee counters that Rule 311(d) only permits such appeals when the trial court order excludes Commonwealth evidence. The Commonwealth does not claim the Rule authorizes, in all possible instances, an automatic pre-trial interlocutory appeal at the sole discretion of the prosecutor. Thus, we need not resolve that question as it is not before us.

¶ 10 The Rule itself states that,

In a criminal case, under circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in

the notice of appeal that the order will terminate or substantially handicap the prosecution.

Pa.R.A.P. 311(d). The Rule does not explicitly limit the Commonwealth's right of interlocutory appeal to any particular class of pre-trial orders. Rather, it indicates that the Commonwealth may proceed "under circumstances provided by law." *Id.* The Commonwealth acknowledges that the body of case law decided both before the Rule was promulgated and after inception of the Rule emanates from instances in which a trial court suppressed evidence favorable to the prosecution. However, the Commonwealth contends this is a distinction without a difference in view of the underlying rationale for permitting the prosecution to take an interlocutory appeal as of right from an adverse suppression ruling.

¶ 11 The parties do not dispute the Commonwealth's right to appeal the grant of a pre-trial suppression motion. They agree, as they must, that the Commonwealth's certification under Rule 311(d), in and of itself, provides an absolute right to appeal from an adverse pre-trial suppression ruling. *See Commonwealth v. Pitts,* 740 A.2d 726, 732 (Pa.Super.1999) (citing cases). Indeed, our Supreme Court has explained that the entire purpose of amending Rule 311 to add subsection (d) was to "permit an interlocutory appeal as a matter of right to the Commonwealth in instances where the Commonwealth asserts that the order will terminate or substantially handicap the prosecution." *Commonwealth v. Rosario,* 538 Pa. 400, 404, n. 3, 648 A.2d 1172, 1174 n. 3 (1994).

¶ 12 It is clear from the context in which the above statement was made that the Supreme Court's attention was focused on the effect of a pre-trial order granting suppression. *See id.* (citing cases). Nevertheless, our Supreme Court subsequent-ly extended the reasoning of *Rosario* and has held that the Commonwealth may appeal a pre-trial order granting a motion *in limine* that excludes evidence and has the effect of terminating or substantially handicapping the prosecution. *Commonwealth v. Matis,* 551 Pa. 220, 231, 710 A.2d 12, 17 (1998). *Matis* relies on an earlier Supreme Court determination that no fundamental distinction can be made between a motion to suppress evidence and a motion *in limine* concerning the admissibility of evidence:

> There is no essential difference between suppression rulings and rulings on motions *in limine* to admit or exclude evidence. In both cases, a pretrial ruling is handed down which admits or excludes evidence at trial, and in both cases, once a jury is sworn, the Commonwealth may not appeal from an adverse ruling. That suppression motions are always of constitutional dimension and motions *in limine* are only sometimes of constitutional dimension is of no import, for in both cases, without an immediate right of review, the Commonwealth's case may be so hampered that the Commonwealth may be unable to proceed.

*Commonwealth v. Gordon,* 543 Pa. 513, 517, 673 A.2d 866, 868 (1996).

¶ 13 *Gordon* originated as a Commonwealth appeal from a pre-trial order that prevented the prosecution from adducing certain evidence. The procedural posture of *Gordon,* although stemming from an order entered pursuant to a motion *in limine,* was in essence the same as an appeal from an adverse suppression ruling since the Commonwealth sought to *include* evidence the trial court had determined must be *excluded.* The present appeal reverses the above situation in that the trial court's ruling on the motion *in limine* has an *inclusory* rather than *exclusory* effect.

¶ 14 The *Gordon* Court explicitly acknowledged that whether the trial court has ruled on a suppression motion or a motion *in limine*, the effect on the case is identical: the trial court has either admitted or excluded evidence. *Id.* Moreover, the Supreme Court's rationale was not grounded on any distinction that might exist between the inclusion of evidence and its exclusion. *Gordon* turns on the inescapable fact that, once a jury is sworn, the Commonwealth may not appeal an adverse ruling, whatever form that ruling takes. *Id.*, 543 Pa. at 517, 673 A.2d at 868.

¶ 15 The Double Jeopardy Clause of the United States Constitution bars a second prosecution for the same offense after either an acquittal or a conviction. *Commonwealth v. McGee*, 560 Pa. 324, 327, 744 A.2d 754, 756 (2000). "Double jeopardy protections afforded by the United States and Pennsylvania constitutions are coextensive and prohibit repeated prosecutions for the same offense." *Commonwealth v. Lively*, 530 Pa. 464, 467, 610 A.2d 7, 8 (1992). Our statutory law explicitly precludes the Commonwealth from trying a defendant a second time if a former prosecution resulted in either acquittal or conviction. *Commonwealth v. Bracalielly*, 540 Pa. 460, 470, 658 A.2d 755, 760 (1995) (citing 18 Pa.C.S.A. § 110). Thus, double jeopardy considerations preclude appeal if the Commonwealth loses. If it wins, it still may not appeal because it is not an aggrieved party. In contrast, a defendant convicted under an erroneous pre-trial ruling retains the opportunity to cure the defect on appeal.

¶ 16 The *Gordon* Court addressed the balance between the constitutional interests implicated when the Commonwealth is permitted to take an interlocutory appeal from an adverse pre-trial suppression order:

Concerning speedy trial rights, while it is obvious that appeal of a pretrial order will cause a delay in the trial, the issue is not whether there is a delay, but the weight of the competing interests. Here, the competing interests are promptitude versus a considered determination of whether the Commonwealth has had a fair opportunity to put on its *best* case. In our view, to preclude an immediate review of a pretrial ruling that would terminate or substantially handicap the Commonwealth's case would be a harm that far outweighs the benefit to the defendant of securing a more speedy trial.

*Gordon*, 543 Pa. at 518, 673 A.2d at 868 (emphasis added).

¶ 17 Our Supreme Court originally authorized the Commonwealth to take interlocutory appeals from pre-trial suppression orders because of the effective finality of such rulings:

From the point of view of the Commonwealth, two possible situations may arise: (a) the order of suppression will result in a termination and conclusion of the prosecution or (b) while the order of suppression will not result in a termination or conclusion of the prosecution, it will result in a prosecution wherein the Commonwealth is handicapped because it cannot present *all* its available evidence.

*Commonwealth v. Bosurgi*, 411 Pa. 56, 63, 190 A.2d 304, 308 (1963). The Court further explained that unless the prosecution is afforded the right of appeal after entry of an adverse suppression order, the Commonwealth will be completely deprived of any opportunity ever to secure an appellate court evaluation of the validity of that pre-trial order. *Id.*

The evidence suppressed may well mark the difference between success and failure in the prosecution; to deny the

Commonwealth its only opportunity of securing an appellate review to determine whether the evidence was properly suppressed is highly unfair to the Commonwealth and the interests of society which it represents.

*Id.*

¶ 18 The *Bosurgi* Court did not phrase its rationale so narrowly as to confine the impact of its decision solely to the review of adverse suppression orders. Rather, the Court expressed its decision in terms of the situation that results when the prosecution is deprived of the right to use all of the evidence available against the defendant. Thus, *Bosurgi* addresses the Commonwealth's need to proceed to trial with the proper quantum of admissible evidence. Whether that quantum has been reduced by an order granting suppression or enhanced by the denial of a prosecutor's pre-trial motion *in limine*, the Commonwealth's faces the same problem: if the defendant is acquitted, appellate review of the trial court's order can never be attained.

¶ 19 Our Supreme Court's decisions in *Bosurgi* and its progeny are based on the fundamental fact that if the Commonwealth has no opportunity to obtain appellate review of an adverse pre-trial interlocutory order implicating double jeopardy concerns, such review will never occur because the Commonwealth cannot try a defendant for a second time if the first prosecution results in an acquittal. Indeed, this premise is so basic that our Supreme Court has not limited the principle originally articulated in *Bosurgi* only to pre-trial evidentiary rulings. *See, e.g., Matis, supra* (permitting the Commonwealth to appeal, on double jeopardy grounds, from an order denying a continuance to secure a necessary witness); *Commonwealth v. Johnson,* 542 Pa. 568, 669 A.2d 315 (1995) (authorizing the Commonwealth to appeal from an order transferring a case from the criminal division to the juvenile division because double jeopardy attaches at the initiation of a juvenile adjudicatory hearing).[3]

3. As the *Bosurgi* Court noted, the Pennsylvania Supreme Court has consistently upheld the right of the Commonwealth to lodge pre-trial appeals in criminal cases so long as the appeal involves a question of law and not of fact. 411 Pa. at 61–62, 190 A.2d at 307. The determinative factor in whether to permit the Commonwealth to take an interlocutory pre-trial appeal focuses on the question of whether denial of the right to such review harms the Commonwealth. *Id.* at 63, 190 A.2d at 308.

> In our zeal to protect and preserve for the accused every constitutional right to which he is entitled we too often forget and neglect to preserve the rights of society which, too, are entitled to consideration.

*Id.* at 63–64, 190 A.2d at 308.

In *Gordon,* our Supreme Court stated that interlocutory appeals in a criminal case implicate competing interests. *Gordon,* 543 Pa. at 518, 673 A.2d at 868. The question is not whether a **delay** is caused by an interlocutory appeal, the question is what weight must be given to the defendant's interest in prompt

settlement of the matter versus the people's interest in achieving justice by affording the Commonwealth a fair opportunity to put on its best case. *Id.* That a defendant in a criminal case has the right to a speedy trial under both the Pennsylvania and the United States Constitutions is beyond argument. However, there is no statutory or case law that proclaims the existence of a corresponding "right" to be free of interlocutory appeals.

When the Commonwealth pursues an interlocutory appeal that implicates the defendant's rights under Rule of Criminal Procedure 600, the appropriate response is for the defendant to file a motion pursuant to that Rule. The trial court may then determine whether the interlocutory appeal has been taken in defiance of the accused's constitutionally mandated speedy trial rights. If the trial court finds that the Commonwealth has proceeded without regard to the requirements of "due diligence," then the court may grant the appropriate relief.

We cannot agree with Judge Bender's impassioned dissent that this appeal and the

■ ¶ 20 The trial court order entered in this case denied the Commonwealth's motion *in limine* and will permit the defense to adduce certain evidence at trial to which the prosecutor objects. Should the defense secure an acquittal, whether that acquittal is grounded on this evidence or based on some other consideration, double jeopardy will prevent the Commonwealth from ever obtaining appellate review of the trial court's order. For this reason, we conclude that *Bosurgi* and its progeny require us to address the merits of the Commonwealth's appeal from the denial of its motion *in limine* as duly certified under Rule 311(d).

¶ 21 The trial court ruled the complainant's convictions for prostitution inadmissible insofar as they stem from acts that occurred with third parties before the events underlying this appeal. The trial court additionally held that evidence concerning the complainant's sexual history with Appellee is admissible. We make no comment upon the propriety of the first ruling because that issue is not ripe for review and is not before us at this time. The Commonwealth has not challenged the second determination and it is therefore not a subject for our consideration.

¶ 22 The trial court also determined that the complainant's conviction for prostitution predicated on acts that occurred with a third party after the assaults alleged here will be admissible at Appellee's trial. The Commonwealth concedes that the complainant's probationary status (without identifying the charges for which she is on probation), could be explored at trial insofar as this is relevant to show bias towards the prosecution. Commonwealth's Brief at 12. However, the Commonwealth challenges the trial court's decision to admit evidence that the complainant was convicted of prostitution, based on acts that occurred one month after the events at issue here, and seeks to preclude this information from being presented to the jury.

■ ¶ 23 The admission of evidence is committed to the sound discretion of the trial court. *Commonwealth v. Chamberlain*, 557 Pa. 34, 39, 731 A.2d 593, 595 (1999).

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Spiewak*, 533 Pa. 1, 8 n. 4, 617 A.2d 696, 699 n. 4 (1992) (citation omitted). A defendant has a fundamental right to present evidence provided it is relevant and not subject to exclusion under

companion appeal in *Commonwealth v. Shearer*, No. 787 WDA 2001, demonstrate that the exercise of certification by the Commonwealth has lost touch with either the language of Rule of Appellate Procedure 311 or with the underlying purpose of the Rule. In the present case, Appellee has not indicated in any manner that he believes his speedy trial rights have been compromised by the Commonwealth's interlocutory appeal. He has not claimed that the Commonwealth proceeded in bad faith nor has he challenged this appeal as frivolous. Indeed, at the hearing conducted on the suppression motion, the trial court explicitly found that Appellee consented to the Commonwealth's interlocutory appeal. N.T., 10/12/00, at 14. In *Shearer*, counsel for the defendant affirmatively asserted during oral argument before this Court that his client had waived his Rule 600 rights, apparently not being concerned about his client's speedy trial rights being compromised by the Commonwealth's interlocutory appeal. Thus, in this case and in *Shearer*, the issue of speedy trial rights has been waived. While we cannot discount the possibility that some prosecutor might at some future date abrogate his duty to protect the accused's constitutional rights, we cannot agree that the prosecutors in this case or in *Shearer* have done so.

any established evidentiary rule. *Commonwealth v. McGowan*, 535 Pa. 292, 294–95, 635 A.2d 113, 115 (1993). Even so, relevant evidence is admissible only if its probative value outweighs its prejudicial impact. *Commonwealth v. Robinson*, 554 Pa. 293, 305, 721 A.2d 344, 350 (1998).

¶ 24 A trial judge should take care that nothing relevant is excluded so long as its admission will not unduly distract the attention of the jury from its main inquiry. *Commonwealth v. Baez*, 554 Pa. 66, 93, 720 A.2d 711, 724 (1998). The trial judge must determine whether evidence which, although logically relevant on the ultimate issue, may nevertheless be excluded because its general effect on the trial will be to confuse the jury by distracting its attention away from the jury's primary concern to collateral issues. *Id.* Otherwise admissible evidence is excludable if its prejudicial effect outweighs its probative value. *Commonwealth v. Johnson*, 556 Pa. 216, 242, 727 A.2d 1089, 1102 (1999).

¶ 25 Instantly, the trial court applied the Rape Shield Law to exclude evidence of the Complainant's sexual activity with third parties prior to the events underlying this appeal. However, the trial court concluded the jury was entitled to hear that the complainant was convicted of prostitution for acts that occurred a month after Appellee's arrest. In so holding, the trial judge stated that the conviction was "circumstantial evidence of whatever value" that a woman who has been raped in December is unlikely to engage in prostitution in January[.]" N.T., 12/12/00, at 12–13.

¶ 26 In pertinent part, the Rape Shield Law provides as follows:

Evidence of specific instances of the alleged victim's *past sexual conduct*, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under [Chapter 31 of the Crimes Code] except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S.A. § 3104(a) (emphasis added). On its face, the Rape Shield Law might seem to apply only to sexual activity that occurred before, and not after, an alleged sexual assault. However, the statute does not explicitly so state. We believe the statute must be read more broadly than this and that "past sexual conduct" refers to the complainant's entire sexual history that has occurred before trial.

¶ 27 Rape shield laws in general are legislative recognitions of the minimal probative value of a complainant's sexual history and are designed to prohibit "the travesty of presenting a noisome stream of defense witnesses testifying to the sexual propensities" of the complaining witness. *Commonwealth v. Majorana*, 503 Pa. 602, 609, 470 A.2d 80, 84 (1983). Pennsylvania designed its statute to rectify these abuses. *Id.* Our Supreme Court has explained that the specific purpose of the Pennsylvania Rape Shield Law is to prevent a sexual assault trial from degenerating into an attack upon the collateral issue of the complainant's reputation rather than focusing on the relevant legal issues and the question of whether the events alleged by the complainant against the defendant actually occurred. *Commonwealth v. Berkowitz*, 537 Pa. 143, 151, 641 A.2d 1161, 1165 (1994). This purpose is not fostered by limiting application of our Rape Shield Law to sexual conduct that occurred before the incident giving rise to criminal charges but allowing a defendant to besmirch a complainant with accusation and

innuendo based on her conduct after an alleged rape. Specifically, the Rape Shield Law's purpose would not be served in the instant case by permitting Appellee to explore any of the complainant's prostitution convictions solely to show she has a propensity to engage in sexual activity for hire. *See Baez*, 554 Pa. at 93, 720 A.2d at 724 (holding logically relevant evidence must be excluded if its effect will be to confuse the jury by distracting attention away from the primary concern to collateral issues); *Commonwealth v. McMaster*, 446 Pa.Super. 261, 666 A.2d 724, 729 (1995) (ruling exclusion of otherwise relevant evidence is warranted if it may confuse, mislead, or prejudice the jury or cause a decision based upon something other than the legal propositions relevant to the case).

¶ 28 Our law recognizes that the "prior bad acts" of a criminal defendant are not generally admissible to show bad character or propensity to commit crimes. *Commonwealth v. Counterman*, 553 Pa. 370, 719 A.2d 284, 300 (1998). This is so because proof of the commission of one offense is not generally proof of the commission of another. *Id.* By analogy, that the complainant was convicted of prostitution with someone other than Appellee is no more probative of the allegation that she prostituted herself with Appellee than it would be if she were on trial for the crime of prostitution.

¶ 29 This evidence does not exculpate Appellee. It is not probative of the complainant's willingness to commit sexual acts with Appellee, for hire or for any other reason. In particular, the complainant's conviction for acts with a third party has *no* bearing on whether the complainant feared Appellee after the alleged attack. Whatever the motivation for the complainant's conduct might be, evidence of her sexual history with a man other than Appellee after the alleged rape is non-probative of her inclination to consent to such activity with Appellee on December 16, 1999—or at any other time.

¶ 30 Our application of the Rape Shield Law to bar admission of evidence concerning the complainant's convictions for prostitution is limited to the facts that have been developed thus far in this case. It is possible that a situation may arise during trial that would place this evidence within some recognized exception to the Rape Shield Law. We decline to speculate on such possibilities. As the trial unfolds, it will be up to the sound discretion of the trial court to rule on evidentiary questions in accordance with Pennsylvania law.

¶ 31 For these reasons, we reverse that portion of the trial court's pre-trial order which denied the Commonwealth's motion *in limine* to exclude evidence of the complainant's conviction for prostitution based on events that occurred after the events underlying the charges filed against Appellee. As already noted, we make no pronouncement concerning the propriety of the remainder of the pre-trial order.

¶ 32 Order reversed in part. The case is remanded for trial. Superior Court jurisdiction relinquished.

¶ 33 JOYCE, J., STEVENS, J., KLEIN, J. and GRACI, J. join.

¶ 34 GRACI, J. files a Concurring Statement, joined by STEVENS, J.

¶ 35 BENDER, J. files a Concurring and Dissenting Opinion.

¶ 36 DEL SOLE, P.J. files a Dissenting Opinion, joined by McEWEN, P.J.E. and TODD, J.

CONCURRING STATEMENT BY GRACI, J.:

¶ 1 I join the thorough and well-reasoned opinion of the majority. I write

separately only to note my view that the Supreme Court's opinion in *Commonwealth v. Killen*, 545 Pa. 127, 680 A.2d 851 (1996), is not to the contrary. I am also compelled to take issue with Judge Bender's suggestion that our Commonwealth's prosecutors are being "intellectually dishonest" in invoking the standard for interlocutory appeals. Concurring and Dissenting Opinion, at 914.

¶ 2 In *Killen*, the court said:

> The proffered testimony in the case *sub judice* does not reference in any way the complainant's *past* sexual conduct as proscribed by [18 Pa.C.S.A.] § 3104(a); rather, the statements evidence the complainant's state of mind shortly *after* (and by implication during) her alleged sexual assault and are therefore relevant and admissible to impeach her credibility.

*Id.* at 854. I do not believe that the court's emphasis of the word "after" in juxtaposition with the word "past" may be taken as the court's signal that the Rape Shield Statute only applies to evidence of the victim's sexual conduct which precedes the time of the alleged sexual assault. This view is borne out by the statement that next follows the above quote: "The Rape Shield Law was not designed to exclude evidence of a victim's statements to persons which are part of and relevant to the ongoing episode in which the alleged criminal activity takes place." *Id.* Thus, it is clear that the court in *Killen* was not suggesting that evidence of a victim's sexual conduct after the event giving rise to the charges was outside of the protection afforded by the Rape Shield Statute.

¶ 3 The Rape Shield Statute, by its title, governs "evidence of [a] victim's sexual conduct." 18 Pa.C.S.A. § 3104. It refers four times to the "victim's past sexual conduct." *Id.* As the statute is concerned with the admissibility of evidence at the trial of the offense being prosecuted, I understand the word "past" to refer to anything that occurs before the trial. The date of the offense is irrelevant to the operation of the statute. That is my understanding of the majority opinion. Opinion, at 914.

¶ 4 Turning to Judge Bender's comments, I do not believe that the Commonwealth has been granted "essentially unchecked authority to certify an adverse pretrial order." Concurring and Dissenting Opinion, at 914.[4] The Commonwealth's certification must be made in good faith. Evidence to the contrary could result in the quashing of an appeal brought by way of Rule 311(d). I recognize that some

---

**4.** I recognize that Judge Bender is not the first member of this Court to criticize the Commonwealth's attorneys in certifying appeals under Pa.R.A.P. 311(d). *See, e.g. Commonwealth v. Santiago*, 2003 PA Super 94, ¶ 25 n. 14, 822 A.2d 716 (filed 3/10/03). Lest the reader be misled, however, it should be pointed out that, in *Santiago*, the trial court issued a multi-part pretrial order from which the Commonwealth took its appeal. *Id.* at ¶ 4. The Commonwealth raised four separate claims resulting from the trial court's order which, *inter alia*, suppressed the defendant's statements, prohibited the introduction of some of the Commonwealth's evidence, allowed the defendant to introduce certain hearsay evidence, and refused to address an issue until the time set for trial. *Id.* at ¶ 5. It was only as to the last claim to which the panel annexed the footnote cited by Judge Bender. Concurring and Dissenting Opinion, at 912 n. 6. The *Santiago* panel reversed the trial court on two of the other claims raised by the Commonwealth. Had immediate pretrial appeal not been available, the prosecution would have been without substantial evidence in a murder prosecution, including inculpatory statements made by the defendant. One can hardly suggest from an examination of the complete opinion and the ultimate result in *Santiago* that the Commonwealth's certification was wholly inappropriate or lacking in good faith.

might say that this is little protection because there would rarely be evidence of lack of good faith or bad faith by the certifying prosecutor. This may be so, but it is because the Commonwealth's prosecutors, with rare exception, take their responsibilities to the courts and to the public seriously and in conformity with the rules of professional conduct.

¶ 5 While the Commonwealth's prosecutors may be zealous in their representation and may certify some appeals as to which there may be a difference of opinion as to whether a prosecution is substantially handicapped by an adverse pretrial order, I am aware of no evidence that they are being intellectually dishonest in doing so. Instead, they are following the pronouncements of this Court and the Supreme Court as the prosecutors understand and interpret them. For that they should not be chastised.

¶ 6 With these thoughts, I fully join the opinion of the majority.

¶ 7 STEVENS, J. joins in this Concurring Statement by GRACI, J.

## CONCURRING AND DISSENTING OPINION BY BENDER, J.:

¶ 1 I am in agreement with our Dissenting Colleague, Judge Del Sole, with respect to the appealability of the order in question and therefore join the Dissenting Opinion in that regard. However, I would like to add my view on this and other matters germane to the present case.

¶ 2 In my opinion, by both rule and legal theory, the right of the Commonwealth to appeal from an adverse pre-trial order was intended to be a right limited to the exceptional circumstance and not the common one; that is, a right to be exercised in cases where the pre-trial ruling was suffi-

ciently detrimental to the Commonwealth's case that going forward with the prosecution would be virtually pointless, or at least a rather perilous proposition. The right of the Commonwealth to appeal from a pre-trial order first arose via caselaw, yet from the moment the right was first recognized that right was fraught with ambiguity and seemingly destined for controversy.

¶ 3 In *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963), our Supreme Court first recognized the Commonwealth's right to an immediate appeal from an adverse pre-trial order. There they held that the Commonwealth was entitled to appeal from a pre-trial order the effect of which was to terminate the prosecution. However, in a manner consistent with a person hedging his position, the Court further allowed such an appeal where even though the order would not result in termination it would handicap the Commonwealth by preventing it from presenting *"all* its available evidence." *Id.* at 308. Thus, in effect, while the Court imposed a seemingly rigid standard for appeal on the one hand, it softened it immediately. As such, lower courts were left the task of determining under which circumstances the Commonwealth was entitled to take an immediate appeal—not an easy task when one must try to decipher an opinion that, as noted by no less of an authority than then Chief Justice Nix, was "not the model of clarity." [5]

¶ 4 Even though *Bosurgi* itself was somewhat equivocal as to the standard necessary to constitute an appealable order, subsequent cases seemed to settle on the language "terminates or substantially handicaps its prosecution" as the applicable guideline. *Bosurgi* itself may have occasioned this interpretation when it stated that the pre-trial order "may well mark the difference between success and failure

---

5. *Commonwealth v. Dugger,* 506 Pa. 537, 486     A.2d 382, 387 (1985).

in the prosecution." *Id.* at 308. In any event, by 1985, more than twenty years after *Bosurgi,* in *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985), the Supreme Court used the "terminates or substantially handicaps" language in such a manner as to convey the impression that it was by then well established as a recitation of the standard by which the appealability of an adverse pre-trial order would be measured. One earlier case that grappled not only with the applicable standard, but also the process to be employed in determining if the standard was met, was the predecessor of *Dugger, Commonwealth v. Lapia,* 311 Pa.Super. 264, 457 A.2d 877 (1983)(en banc), a decision of this Court sitting *en banc* that was decided along with *Dugger.* In *Lapia* we summarized the *Bosurgi* holding thusly:

> when an order suppressing evidence terminates or substantially handicaps the prosecution, the order is immediately appealable by the Commonwealth. This is so because in practical effect, the order is final. If the Commonwealth were required to go to trial without the suppressed evidence, the defendant would probably, if not certainly, be acquitted.

*Id.* at 881.

¶ 5 The above passage is instructive on two fronts. Not only does it articulate this Court's, and ostensibly the widely held, perception of the applicable standard in very understandable terms, but it also supplied the theoretical legal basis for the appealability of the order. According to *Lapia,* the Commonwealth was entitled to file an immediate appeal from an order where, because of the order, the defendant "would probably, if not certainly, be acquitted." [6] Just as importantly, *Lapia* indicates why the Commonwealth was entitled to take the immediate appeal; under

such circumstances, the order was, in effect, a final order. This is important. The appealability of an order is a legal, jurisdictional question and requires legal authorization. Significantly, at the time of *Bosurgi,* prior to the promulgation of Pa. R.A.P. 311(d), there was in effect no rule that allowed an appeal as of right from an interlocutory order, or its functional equivalent, but, of course, the right to appeal from a final order is the most fundamental of all precursors to an appeal and was firmly established, both then and now.

¶ 6 Perhaps purposefully, the *Bosurgi* decision was somewhat vague with respect to the legal basis for its decision and, frankly, seemed to rely more heavily upon policy considerations than legal theory. *Bosurgi* at 308–09. *Bosurgi* does cite cases that equated orders that would terminate a prosecution as "final orders." Of course, in this circumstance, the order has the well-recognized effect of putting a party "out of court," and, as such, would be appealable under a well-known standard of finality. However, the same cannot necessarily be said of an order that merely "handicaps" the prosecution by preventing the introduction of some of the Commonwealth's evidence. In this circumstance, presumably the case would proceed to trial after appeal even if the appeal were unsuccessful. In such a case, the adverse order would not put the Commonwealth "out of court," and was not "final" in the traditional sense. Nevertheless, since the concept of "finality" was the legal premise upon which the right to appeal rested, the term "final order" took on a different meaning in this context and was slanted greatly toward protecting the Commonwealth's opportunity to receive appellate review of adverse rulings in light of double jeopardy proscriptions.

---

**6.** By way of implication, *Lapia* suggests if the order was not such that would probably lead to acquittal, the Commonwealth was not entitled to an immediate appeal.

¶ 7 The finality problem was eliminated when, in 1992, Pa.R.A.P. 311(d) was put in place. That rule provides:

In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

Thus, no longer was it necessary to torture the term "final order" to allow a Commonwealth appeal from an adverse pre-trial order. The Commonwealth was now extended a qualified appeal of right from an order that was defined as interlocutory.[7] Nevertheless, under Pa.R.A.P. 311, the Commonwealth's right to appeal was not purely discretionary, nor all encompassing. That is, by engrafting the familiar "terminates or substantially handicaps" language, the rule in question did not grant the Commonwealth the right to appeal any adverse pre-trial order, only those where the effect of the ruling was to "terminate or substantially handicap the prosecution."[8] Pa.R.A.P. 311(d). The usage of the term "substantially" to modify the term "handicap" should not be overlooked. Not only does the term literally modify the word handicap to mean significantly more than merely handicapping the prosecution, the placement of the term in proximity to the term "terminate" seemingly implies the imposition of a handicap that has nearly the same effect as termination. Addi-

tionally, as noted by Chief Justice Nix in his concurrence to *Dugger:*

If any diminution resulting from an adverse order of suppression is to be treated as justification for the Commonwealth's right to appeal, the *Bosurgi* court's use of the term "substantially handicapped" is rendered surplusage.

*Dugger,* 486 A.2d at 387.

¶ 8 Of course, since the term substantially handicap was also incorporated in the rule, Justice Nix's observation would be just as applicable to interpretation of the rule as it was with respect to the standard evolving by caselaw. Thus, whether one considers the "final order" doctrine, or a fair interpretation of the rule's language as authority for the right to appeal, in theory, the right to appeal is limited to situations where the order has the effect of terminating the prosecution, or nearly so. Yet, if this is the theoretical origin, the experience in practice has been much different. From the point of origin of termination or substantially handicaps, we have now slid down the proverbial slippery slope to a point where a relatively ancillary and somewhat trivial matter such as the admissibility of a complainant's prostitution conviction can be immediately appealed.

¶ 9 In this case, there has been no suppression of key prosecution evidence. Indeed, the Commonwealth has not been precluded from introducing **any** evidence of Appellant's guilt. Rather, the court has simply issued a ruling that the complainant's prostitution conviction will be admis-

---

7. Interestingly, an appeal previously justified under the "final order" doctrine is now regarded under Pa.R.A.P. 311(d) as an "interlocutory appeal as of right."

8. In actuality, literally read, the rule does not require that the order terminate or substantially handicap the prosecution in order to be appealable. The rule's language entitles the Commonwealth to appeal where it **certifies**

that the order will terminate or substantially handicap the prosecution. However, unless the Rules Committee was merely providing the Commonwealth a plausible pretext for taking an appeal and further intended to provide the Commonwealth complete discretion in taking an appeal, then we can assume that the intention was to impose a threshold standard for appealability purposes.

sible. While the court's ruling would likely aid the Appellant's defense if allowed to stand, can anyone argue with honest conviction that the ruling at issue here hampers the Commonwealth's case so severely that prosecution would be pointless, or nearly so? Does anyone honestly believe that had the Commonwealth lost its appeal here, it would have concluded that prosecution would be pointless and would have dismissed the charges against Appellant. What's next? Will the Commonwealth be permitted to ask pre-trial whether expected hearsay testimony will be admissible and then take an appeal if the decision goes against it? [9]

¶ 10 Of course, in reality, since the Commonwealth has been granted essentially unchecked authority [10] to certify an appeal from an adverse pretrial order, any restriction placed upon the Commonwealth's right to appeal is only as valid as the integrity of the various District Attorney's Offices exercising their "right" to appeal.

As this case and the cases of *Commonwealth v. Shearer*, 828 A.2d 383, 2003 WL 21419025 [11] and *Commonwealth v. Santiago*, 2003 PA Super 94, 822 A.2d 716 (filed 3/10/03), readily demonstrate, the exercise of the certification has completely lost touch with both the concept of finality for appeal purposes as well as the language of Rule 311. Either District Attorneys in Pennsylvania believe that the words substantially handicap in this context have been sufficiently diluted that it no longer has its literal meaning, or other pressures and interests have led District Attorneys to be intellectually dishonest in invoking this standard. In either event, we should not be surprised it has come to this.

¶ 11 In the aftermath of *Bosurgi*, this Court struggled with the process whereby the Commonwealth took its appeal from adverse pre-trial orders, specifically, the question of our empowerment to consider whether or not the order in question met

9. The harm to the defendant should be obvious. For a myriad of reasons, Pa.R.Crim.P. 600 requires a trial to commence within certain time restrictions. When an appeal is taken from a pre-trial order, the trial is necessarily delayed. If the defendant is incarcerated, he may remain there throughout the appeal even though he has not been adjudicated guilty of the crime charged. While, due to double jeopardy considerations, there was an inherent unfairness in not allowing any Commonwealth appeal from pre-trial order, allowing an appeal from too many pre-trial orders is certainly not a desirable outcome either.

10. My Colleague, Judge Graci, in his Concurring Statement, takes issue with my assertion that the "Commonwealth has been granted essentially unchecked authority" to appeal an adverse pre-trial order. In response, I would simply note that I am not the only member of this Court that has characterized the current circumstance is such a fashion. In *Commonwealth v. Santiago*, 2003 PA Super 94, 822 A.2d 716 (filed 3/10/03), a panel of this Court made the following commentary regarding a Commonwealth certification under Rule 311:

> Moreover, the Commonwealth, in order to be allowed to take an interlocutory appeal pursuant to Pa.R.A.P. 311(d), certified in good faith that this ruling terminated or substantially handicapped its prosecution. How this assertion can be made is completely beyond the dictates of logic and the Commonwealth's obligation to act as an officer of the court. This is yet another example of the abuse of the *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (Pa. 1985) rule that has given the Commonwealth a sense that it can *carte blanche* appeal any ruling that is adverse to it, simply by uttering a few magic words.
>
> *Id.*, at n. 14.

11. In *Shearer*, another case presented to this *en banc* panel, the District Attorney of Butler County certified for appeal under PA.R.A.P. 311(d) the very preliminary order compelling a child witness to submit to psychological testing for purposes of determining the child's competency to testify. Mind you, this was not an order finding the child incompetent to testify. Merely an order directing that the child be tested.

the theoretical standard. Although there was some conflict among the decisions,[12] in *Commonwealth v. Lapia,* this Court attempted to establish a consensus opinion and concluded that the certification by the Commonwealth that the order terminated or substantially handicapped the prosecution was not binding upon this Court and was not itself a sufficient basis for gaining an appeal. Rather, the Commonwealth's certification could be rejected if it appeared to the Court that the order appealed from did not in actuality substantially handicap the prosecution. This position was short lived, however, and reversed in *Lapia's* companion case, *Commonwealth v. Dugger.* There the Supreme Court held that the Commonwealth's certification was binding and all that was required to gain an immediate appeal. Lest the impact of *Dugger* was lost upon District Attorneys across the state, Chief Justice Nix cut through the rhetoric of the Opinion to state its practical effect:

> If the ruling of the Court today is intended as accepting an interpretation of *Bosurgi* which would in fact limit the right of appeal of the Commonwealth, providing for a certification which is conclusive and not subject to challenge renders the qualification of the right illusory. The effect of the majority's opinion today under either situation is to provide an unfettered right of appeal to the Commonwealth whenever it sustains an unfavorable suppression ruling, regard-

less of the impact of that ruling upon the strength of its case.

*Dugger,* 486 A.2d at 387.

¶ 12 Chief Justice Nix's words foretold the consequences of the *Dugger* decision and could not have been more prophetic. So it is that we find ourselves today entertaining appeals from "adverse" orders that can in no honest way be deemed to provide a substantial handicap to the Commonwealth's case, at least, not as that term was described in earlier cases, because District Attorneys no longer view the wording of Rule 311(d) as invoking a standard for appealability. Rather, they now view their right to appeal pre-trial orders as "unfettered."

¶ 13 In the face of this development one must ask why it is that we have reached this juncture. How often in our law is the unilateral decision of a party subjected to no scrutiny by the court? In this arena, once the Commonwealth certifies that the order substantially handicaps the prosecution, an appeal can be taken immediately and this Court is obligated to review the order appealed from regardless of the true detriment to the Commonwealth's case. While we could have hoped that the decision to appeal would have been exercised in keeping with the intent of the rule, for some time there has been no check on the Commonwealth's decision and the present case and the aforementioned *Shearer* rather conclusively demonstrate what this policy has produced, a situation which invokes

---

12. In *Commonwealth v. Smith,* 212 Pa.Super. 403, 244 A.2d 787, 788 (1968), we found that the Commonwealth's appeal was "improper in light of standard set forth in *Bosurgi.*" Our decision was based upon the conclusion that the suppression order in question did not substantially handicap the Commonwealth's prosecution. However, by the time of *Commonwealth v. Deren,* 233 Pa.Super. 373, 337 A.2d 600 (1975), a difference of opinion had

developed as to our ability to look past the Commonwealth's allegation that the prosecution would be substantially handicapped by the order in question. In *Deren,* a majority of the panel concluded that we were not empowered to question the allegation of the Commonwealth. Thus, the stage was set for *Lapia,* and an effort to conclusively determine the matter.

the phrase regarding the inmates running the asylum.

¶ 14 In light of the above, I believe it is time to reexamine the process whereby an immediate appeal is taken from an adverse pre-trial order. Of course, allowing this Court the authority to disagree with the Commonwealth that the order in question substantially handicaps the prosecution and return the case without a decision would be fairly self-defeating since the tri-al would be delayed in any event by the appeals process. However, allowing the trial court to certify the order for appeal upon the Commonwealth's application would provide a check upon the Common-wealth's authority without unnecessarily delaying the trial. As such, I believe the rule should be modified to put such a procedure in place. If the trial court agreed that the ruling in question present-ed a substantial handicap, it could certify the order for immediate appeal. If it disa-greed, however, it could deny the request and force the case to move forward. At that point, the trial court's decision could be appealed, if the Commonwealth truly believed that the ruling in question effec-tively terminated the prosecution, but upon an estoppel basis. That is, if the Commonwealth lost the appeal, it would be precluded from prosecuting the defendant. This should be a sufficient deterrent to taking an appeal from an order that does not truly create a substantial handicap to the prosecution.

¶ 15 Revising the current procedure to the one espoused here would take the ini-tial decision to appeal and place it where it belongs—with the trial court, a neutral party. The Commonwealth would still have recourse if it were sufficiently ag-grieved by the court's ruling, but would be forced to mean what it says when it certi-fies that the decision effectively terminates the prosecution. By so modifying the rule,

we could prevent further erosion of a stan-dard that has already been substantially eroded and return it to something resem-bling the actual language of the rule. An appeal of an adverse pre-trial order would be taken only when it truly had the effect set forth in the rule, and not essentially at the Commonwealth's discretion.

¶ 16 As for the merits of the appeal, I agree with the Majority that the Rape Shield Law prevents the initial introduc-tion of the complainant's prostitution con-victions, both those occurring before and after the incident at the bottom of this case. I do so because I agree that the term "past sexual conduct" refers to the time of the trial and not the time of the incident in consideration. And, indeed, should the complainant admit that she and Appellant have had consensual sex for compensation in the past, I would see no need for the introduction of the prostitu-tion convictions. However, the Rape Shield Law should not be a "shield" to a complainant's prevarications, or a license for the complainant to color his/her testi-mony knowing that strong impeachment testimony will be inadmissible under the Rape Shield Law. If the complainant chose, for whatever reason, to deny that she has had sex for compensation with Appellant in the past, I am of the opinion that the convictions would then become relevant as tending to bolster Appellant's contentions and should then be admissible despite the Rape Shield Law.

¶ 17 The Majority's analysis that the convictions would be admissible because their probative value is outweighed by the prejudicial impact is misguided because the evidence does not prejudice the crimi-nal defendant. The Majority asserts "that the complainant was convicted of prostitu-tion with someone other than Appellee is no more probative of the allegation that she prostituted herself with Appellee than

it would be if she were on trial for the crime of prostitution." Majority Op. at 15. This assertion may be true, but it neglects to recognize that the reason the conviction would be inadmissible if the complainant were on trial for prostitution is not necessarily because of an utter lack of the convictions' probative value, but due to the prejudice of those prior convictions to her **as a criminal defendant**. Since it is Appellant on trial, not the complainant, this factor would be missing.

¶ 18 The Majority further opines "[t]his evidence does not exculpate Appellee. It is not probative of the complainant's willingness to commit sexual acts with Appellee, for hire or for any other reason." *Id.* at 909. However, to suggest that the complainant's several convictions for prostitution do not tend to make Appellant's version of the events more credible and probable is fanciful naivete. In search and seizure law we allow the proximity of an otherwise innocuous exchange between persons to influence the assessment of the transaction. If the exchange occurred in an area known for high drug activity, we acknowledge the validity of a police officer's assumption that it is more probable that the current exchange witnessed by police is also a drug transaction. This is nothing more than typifying behavior based upon past experience, which is precisely Appellant's position here. Similarly, evidence of *modus operandi* is admissible under the assumption that past behavior has been repeated.

¶ 19 The complainant's past behavior indicates that she has actively engaged in sexual activity for monetary compensation, precisely what Appellant has asserted occurred in the incident in question, and previously. While conceivably the complainant has exercised discretion as to whom she sees, and perhaps did not see Appellant professionally, to suggest that her convictions do not support Appellant's theory of the case is disingenuous. It may not conclusively prove the point. But it certainly bolsters Appellant's version of events and, as such, is probative evidence.

¶ 20 For the foregoing reasons, I agree with Judge Del Sole that the present appeal should be quashed. However, I would suggest that the process whereby an appeal is certified under Pa.R.A.P. 311(d) be re-examined and revised in a fashion similar to that set forth above.

## DISSENTING OPINION BY DEL SOLE, P.J.:

¶ 1 I must dissent because I believe that a pretrial order, which does not impinge on the Commonwealth's ability to prosecute its case, is not appealable under relevant caselaw or Pa.R.A.P. 311(b), and accordingly such an appeal should be quashed. In criminal cases, the Majority's ruling will permit the Commonwealth to appeal a pretrial order which does not limit the evidence the Commonwealth offers in support of the prosecution of its case, but impacts solely on the evidence the defense may introduce. I believe this result is contrary to both the Rule and the pronouncements of our Supreme Court which developed the Rule and applied it.

¶ 2 The question of the right of the Commonwealth to appeal from a pretrial order suppressing evidence was first considered in *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963). The Court cited to the rationale behind some Superior Court decisions which considered the Commonwealth's right to appeal pretrial orders in criminal cases. It stated: "The rationale of these decisions is that the Commonwealth should possess the right of an appellate review of the validity of a pretrial order of suppression *where the effect of such order is to terminate the prosecution.*" *Id.* at 308 (emphasis in orig-

inal.) The Court spoke not only to the situation where finality is clear because all the Commonwealth's evidence has been suppressed, but also to situations where the order suppresses a portion of the Commonwealth evidence which would substantially handicap its case. The Court recognized double jeopardy as an underlying concern, and focused on the element of finality in the order which "forces the Commonwealth to trial without *all* of its evidence." *Id.* (emphasis in original.). It found that an order granting the suppression of some of the Commonwealth's evidence had such an attribute of finality as to justify the grant of the right of appeal to the Commonwealth.

¶ 3 The Court applied its earlier ruling in reaching its decision in *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985), wherein it ruled that the Commonwealth's certification that the order substantially handicapped its case "in and of itself" authorized an appeal. *Id.* at 386. In reference to *Bosurgi* the Court stated: "We granted the Commonwealth an appeal, and defined it a substantial handicap whenever the Commonwealth is denied the use of *all* their evidence." [13] *Id.* (emphasis in original.)

¶ 4 Rule 311(b) embodies the reasoning of *Bosurgi* for it requires the Commonwealth, in order to enjoy the right to appeal, to provide a certification that the order at issue "will terminate or substantially handicap the prosecution." The language of this rule applies not only to a suppression ruling but also to a pretrial order granting a motion *in limine* to exclude evidence that has the effect of terminating or substantially handicapping the prosecution. *Commonwealth v. Matis*, 551 Pa. 220, 710 A.2d 12 (1998), citing *Commonwealth v. Gordon*, 543 Pa. 513, 673 A.2d 866 (1996).

¶ 5 The Majority cites to language in *Gordon* which notes that there is no essential difference between suppression rulings and rulings on motions *in limine* to admit or exclude evidence. However, as the Majority recognizes, the court in *Gordon* was considering a denial of a motion *in limine* which prevented the prosecution from presenting certain evidence. The Commonwealth sought to admit transcripts of previous trials of assault cases involving the defendant, which the Commonwealth contended were similar to the crime it was prosecuting. I believe the posture of this case was critical to the Court's decision as evidenced by the Court's holding that, "fairness to the Commonwealth requires the right to appeal adverse pretrial rulings which exclude evidence the Commonwealth deems crucial to its case." *Id.* at 869 (emphasis added). Thus, the Court was referring to a ruling made upon a motion *in limine* which limited the Commonwealth's presentation of its case.

¶ 6 In no case before the Supreme Court of Pennsylvania has the Commonwealth been granted a right to appeal an adverse pretrial ruling that impacted on the defendant's presentation of evidence. [14] The de-

---

**13.** I recognize that the Supreme Court has directed that this Court is not to look behind the Commonwealth's certification to determine if its case has actually been handicapped. However I am not suggesting that such an examination of the evidence take place. This Court should not look to what evidence is being excluded, but **whose** evidence is being excluded, for *Dugger* recognizes that the certification and the right to appeal applies to a denial of the Commonwealth's evidence.

**14.** I believe the decisions of this Court which are contrary to the Supreme Court's pronouncement on this issue should be overruled by this *en banc* panel. *See Commonwealth v. Allburn*, 721 A.2d 363 (Pa.Super.1998), and *Commonwealth v. McBurrows*, 779 A.2d 509, 513 (Pa.Super.2001).

cisions of our Supreme Court and the Rule itself all speak to instances where the trial court's decision negatively impacts the prosecution of the matter by the Commonwealth. *See Commonwealth v. Matis,* 551 Pa. 220, 710 A.2d 12, (1998), *Commonwealth v. Johnson,* 542 Pa. 568, 669 A.2d 315 (1995). Only where the Commonwealth is limited from presenting its full case may it take an immediate appeal from a pretrial ruling by certifying that the order substantially handicaps its case.

¶ 7 The position adopted by the Majority, which would allow appeals from rulings which affect evidence relevant to the defense of the case, may necessary involve unintended consequences. Its ruling can be logically extended to permit the Commonwealth to appeal any evidentiary ruling made during trial which was made in favor of the defense, because under the rationale offered by the Majority the Commonwealth will not later have an opportunity to review this ruling. The Supreme Court and the Rule do not contemplate such action. It is for this reason that it is only in the limited circumstances where the Commonwealth is precluded by court order from presenting all the evidence it has to offer in the prosecution of the action that an appeal from such a pretrial ruling is allowed.

¶ 8 My interpretation of the Rule and the law concerning pretrial appeals by the Commonwealth will not prevent it from seeking review of an adverse pretrial ruling. Any party retains the ability to petition for permission to appeal following a certification by the trial court of a controlling legal issue. See Pa.R.A.P. 1311(b), and 42 Pa.C.S.A. § 702(b). Should the trial court refuse to enter such a certification the proper mode of determining "whether the case is so egregious as to justify prerogative appellate correction" is

with a petition for review. Pa.R.A.P. 1311, Note, and see Pa.R.A.P. 1511.

¶ 9 In this case the Commonwealth sought a permissive appeal after the trial court certified that its evidentiary ruling implicates a controlling question of law as to which there exists substantial grounds for difference of opinion. In addition the Commonwealth filed a timely notice of appeal under Pa.R.A.P. 311(d) certifying that the trial court's ruling substantially handicapped its prosecution. This Court dismissed the petition for permission to appeal due to the existence of a pending appeal under Rule 311(b). As I would quash the interlocutory appeal taken pursuant to Rule 311(b), and, due to the fact that the decision I would make would clarify an interpretation of the Rule for the first time, I would reinstate the motion for permission to appeal and direct that it be forwarded to the Court's motions panel for a determination.

¶ 10 P.J.E. McEWEN and Judge TODD Join in this dissenting Opinion by DEL SOLE, P.J.