J. S16036/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :   IN THE SUPERIOR COURT OF
                                :            PENNSYLVANIA
              Appellee       :
                                  :
             v.              :
                                  :
WALEEM JENKINS,             :
                                  :
             Appellant      :     No. 2586 EDA 2014

Appeal from the Judgment of Sentence November 12, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010227-2011

BEFORE: OTT, J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY DUBOW, J.:                 **FILED APRIL 11, 2016**

Appellant, Waleem Jenkins, appeals from the November 12, 2013 Judgment of Sentence entered in the Philadelphia Court of Common Pleas. After careful review, we affirm on the basis of the trial court's Opinion, which found Appellant's claims were either waived or without merit.

The trial court's Rule 1925(a) Opinion includes a thorough and complete narrative of the facts and procedural history in this case. *See* Trial Court Opinion, filed 3/21/15, at 1-8. While we will not go into exhaustive detail here, some of the relevant facts are as follows.

A jury convicted Appellant of Possession with Intent to Deliver a Controlled Substance after officers of the Philadelphia Police Department's Narcotics Field Unit observed Appellant selling narcotics to a confidential informant ("CI") on two separate occasions, and found narcotics and other

incriminating evidence on Appellant's person while searching him incident to arrest. *Id.* at 2-3.

At trial, the Commonwealth called three members of the Narcotics Field Unit as witnesses. The first was Officer Carlos Buitrago, who observed Appellant selling narcotics to the CI on both occasions. *Id.* at 2-4. Officer Buitrago testified that after the second narcotics sale, Officers Linwood Norman and Reginald Graham arrested Appellant, and Officer Graham searched Appellant's person. *Id.* at 4.

Officer Norman's involvement in the case was limited to this minor role assisting Officer Graham with Appellant's arrest. Officer Norman did not search Appellant, was not present for the first controlled buy, and did not testify at Appellant's trial.

The Commonwealth then called Officer Graham, who also personally observed both narcotics sales and confirmed he was the officer who arrested Appellant, searched Appellant, and recovered incriminating evidence including narcotics from Appellant's person. *Id.* at 4-5.

Finally, the Commonwealth called Sergeant Thomas Meehan, who supervised the investigation of Appellant, and provided the prerecorded buy money the CI used to purchase narcotics from Appellant. *Id.* at 5-6.

Appellant testified in his own defense at trial, denying his involvement in the sale of narcotics. Appellant testified that he worked for a cousin's moving company and that, on the date he was arrested, he was in the area

visiting friends. *Id.* at 6-7. He denied that any of the evidence recovered from his person was his and suggested that it had been planted by one of the officers arresting him. *Id.*

After the jury's conviction, Judge Brinkley sentenced Appellant to three and one-half to seven years of state incarceration, to be followed by three years of probation.

At some point after Appellant's conviction and sentencing, the federal government indicted Officer Norman on corruption charges. *Id.* at 9. None of the allegations in Officer Norman's indictment, however, pertained to his involvement in Appellant's arrest. A federal jury later acquitted Officer Norman of all charges.

Appellant filed a post-sentence motion. After its denial, Appellant timely appealed.

On appeal, Appellant raises the following five issues:

a. Whether Appellant is entitled to a new trial based on after-discovered evidence?

b. Whether the prosecutor committed misconduct in his closing statement?

c. Whether the [trial court] erred in allowing the Commonwealth to use a letter of employment during cross-examination and in allowing the letter to be read to refresh the jury's memory during deliberations?

d. Whether the [trial court] erred in excluding evidence that police officers in a separate case involving Appellant had been indicted?

e. Whether the verdict was against the weight of the evidence?

Appellant's Brief at 5 (capitalization removed).

The Honorable Genece E. Brinkley has authored a comprehensive, thorough, and well-reasoned Rule 1925(a) Opinion, citing to the record and relevant case law in addressing Appellant's claims on appeal. We affirm on the basis of that Opinion.

In his first issue, Appellant raises an after-discovered evidence claim based upon Officer Norman's indictment on corruption charges. To prevail on a motion for a new trial on the basis of after-discovered evidence, Appellant was required to produce admissible evidence, discovered after trial, that:

> (1) could not have been obtained prior to the end of trial with the exercise of reasonable diligence; (2) is not merely corroborative or cumulative evidence; (3) is not merely impeachment evidence; and (4) is of such a nature that its use will likely result in a different verdict on retrial.

***Commonwealth v. Lyons***, 79 A.3d 1053, 1068 (Pa. 2013) (citation omitted). As the reviewing court, "this Court affirms unless the determination constitutes abuse of discretion." ***Id.***

Based on our review of the record, the arguments presented by Appellant, and the relevant case law and statutes, we agree with the trial court that Appellant's after-discovered evidence claim warrants no relief because of Officer Norman's *de minimis* involvement in the case against Appellant and because none of the other officers involved in the investigation into Appellant have been accused of wrongdoing.

Furthermore, as the trial court has thoroughly addressed the issue in its opinion, we adopt the trial court's discussion as dispositive of Appellant's claim. *See* Trial Court Opinion at 8-9. Accordingly, we grant no relief on this issue.

Appellant bases his second claim, one of prosecutorial misconduct, on the Commonwealth attorney's statements in closing arguments referring to himself as "a gladiator" and to the courtroom as "the coliseum." Appellant's Brief at 15-16.

The trial court found that Appellant waived this issue, and we find this position to be correct. ***See Commonwealth v. Cox***, 983 A.2d 666, 685 (Pa. 2009). Appellant did not object to any of the allegedly improper statements at trial. N.T., 6/6/13, at 26-28. Furthermore, as the trial court has thoroughly addressed the issue in its opinion, we adopt the trial court's discussion as dispositive of Appellant's claim. *See* Trial Court Opinion at 10-12. Accordingly, we grant no relief on this issue.

Appellant's third and fourth issues both challenge the trial court's rulings on the admissibility of certain evidence introduced or excluded at trial. "Questions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion." ***Commonwealth v. Russell***, 938 A.2d 1082, 1091 (Pa. Super. 2007) (citation omitted). An abuse of discretion is more

than a mere error of judgment; rather, an abuse of discretion will be found when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." *Commonwealth v. Busanet,* 817 A.2d 1060, 1076 (Pa. 2002) (citation and quotation omitted).

Appellant first argues that the trial court erred in permitting the Commonwealth to read a letter of employment to the jury during cross-examination and again during deliberations. The trial court found that Appellant waived his claim with respect to the use of the letter during cross examination, and we find this position to be correct. "To preserve a claim for review, the defendant must make a timely and specific objection to the introduction of the challenged evidence at trial." *Commonwealth v. Gray*, 867 A.2d 560, 574 (Pa. Super. 2005) (citation omitted). Appellant did not object to the reading of the letter and, thus, waived the issue. N.T., 6/5/13, at 175-79.

Likewise, we conclude Appellant's claim regarding the reading of the letter to the jury during deliberations has no merit, as reading the letter assisted the jury in determining credibility. Furthermore, as the trial court has thoroughly addressed both of Appellant's claims regarding the letter in its opinion, we adopt the trial court's discussion as dispositive of Appellant's claims regarding the letter. *See* Trial Court Opinion at 12-15.

Appellant's next evidentiary claim is that the trial court erred in excluding evidence that two police officers who had no involvement in the instant case, but who had previously arrested Appellant for a wholly unrelated matter, were indicted on allegations of planting drugs and robbing drug dealers. Once again, based on our review of the record, the arguments presented by Appellant, and the relevant case law and statutes, we conclude Appellant's claim has no merit. Furthermore, as the trial court has thoroughly addressed Appellant's claims regarding the letter in its Opinion, we adopt the trial court's discussion, which found the evidence was irrelevant, unfairly prejudicial, and likely to cause confusion. *See id.* at 15-16.

Finally, Appellant claims that the jury's guilty verdict in this case was against the weight of the evidence presented at trial. "A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *Lyons, supra* at 1067 (citation omitted).

When this Court reviews a trial court's ruling on a weight of the evidence claim we do not "substitute [our] judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, [this Court] determines only whether the trial court abused its discretion in making its determination." *Id.*

Based on our review of the record, the arguments presented by Appellant, and the relevant case law and statutes, we conclude Appellant's weight of the evidence claim warrants no relief. Furthermore, as the trial court has thoroughly addressed the issue in its Opinion, we adopt the trial court's discussion as dispositive of Appellant's claim. ***See*** Trial Court Opinion at 17-18. Accordingly, no relief is due.

Therefore, after a careful review of the parties' arguments, and the record, we affirm on the basis of the trial court Opinion.

Judgment of Sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2016

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION


COMMONWEALTH                    :              CP-51-CR-0010227-2011

                                :

                                :

    vs.              FILED

                   MAR 31 2015

                 Criminal Appeals Unit
                 First Judicial District of PA       SUPERIOR COURT
WALEEM JENKINS                  :              2586 EDA 2014


BRINKLEY, J.                                   MARCH 31, 2015

                            OPINION

    Defendant Waleem Jenkins appeared before this Court for a jury trial and was convicted

of Possession with Intent to Deliver a Controlled Substance (PWID). This Court sentenced

Defendant to 3½ to 7 years state incarceration, plus 3 years probation. Defendant appealed this

judgment of sentence to the Superior Court and raised the following issues on appeal: (1)

whether Defendant is entitled to a new trial based on after-discovered evidence; (2) whether the

prosecutor committed misconduct in his closing statement; (3) whether this Court erred in

allowing the Commonwealth to use a letter of employment during cross-examination and in

allowing the letter to be read to refresh the jury's memory during deliberations; (4) whether this

Court erred in excluding evidence that police officers in a separate case involving Defendant had

been indicted; (5) whether the verdict was against the weight of the evidence.

1

## PROCEDURAL HISTORY

On August 18, 2011, Defendant was arrested and charged with PWID and Criminal Use of a Communication Facility. From June 5 to June 6, 2013, a trial was held in the presence of a jury. On June 10, 2013, Defendant was found guilty of PWID. On November 12, 2013, this Court sentenced him to 3½ to 7 years state incarceration, plus 3 years probation. At his sentencing hearing, Defendant stated that he wished to appeal his sentence to the Superior Court and asked this Court to appoint appellate counsel for him. Trial counsel subsequently failed to file a notice of appeal and Defendant was not appointed appellate counsel. On July 31, 2014, this Court reinstated Defendant's appellate rights *nunc pro tunc* and appointed new counsel for Defendant. On August 29, 2014, Defendant filed a Notice of Appeal to the Superior Court. On December 1, 2014, this Court ordered defense counsel to file a Concise Statement of Errors pursuant to Pa.R.A.P. 1925(b). On December 21, 2014, defense counsel filed a motion for a new trial based upon after-discovered evidence and requested an extension of time to file the Concise Statement of Errors so that additional notes of testimony may be transcribed. On March 12, 2015, after receiving the additional notes of testimony, this Court granted Defendant's request for an extension of time to file the Concise Statement of Errors, and defense counsel filed the Statement on March 17, 2015.

## FACTS

Trial began in this matter on June 5, 2013. Defendant was represented at trial by Tobi Russeck, Esquire, while the Commonwealth attorney was Kevin Harden, Jr., Esquire. The Commonwealth called Officer Carlos Buitrago ("Buitrago") as its first witness. Buitrago testified that he had been assigned to the Narcotics Field Unit of the Philadelphia Police Department since 2008. Buitrago testified that, on August 16, 2011, he and his partner, Officer

2

Reginald Graham ("Graham"), met with a confidential informant ("CI") and gave the CI $40 in prerecorded buy money after searching him to make sure that he was not carrying any contraband or currency. (N.T. 6/5/2013 p. 50-60).

Buitrago testified that CI told him there was a black male selling narcotics in the vicinity of the 2400 block of Carpenter Street and that this person would deliver drugs if contacted by telephone at (267)230-1174. Buitrago testified that he told CI to place a call to that number, which CI did in his presence. Buitrago further testified that CI asked for two packets and then walked to the southeast corner of 24th and Carpenter, while he remained behind and observed. Buitrago stated that he remained approximately 25-30 feet away from CI and that nothing impeded his view of CI. Buitrago testified that he saw Defendant walk westbound on Carpenter towards 24th Street and approach CI. Buitrago further testified that Defendant and CI had a brief conversation, following which CI handed Defendant the prerecorded buy money and Defendant handed CI small objects in return. Buitrago testified that CI returned to his location as Defendant walked out of view and, upon returning, CI handed him two brown Ziploc packets containing a white chunky substance. Buitrago testified that he field-tested the substance he received from CI and it tested positive for cocaine. Buitrago stated that he attempted to locate Defendant, but was unable to find him. Id. at 62-66.

Buitrago testified that he decided to arrange a "buy bust" on August 18, 2011, in which CI would purchase narcotics from Defendant and Defendant would be arrested immediately. Buitrago testified that, at approximately 3:00 p.m. on the 18th, he met with CI and gave him $40 in prerecorded buy money after he searched CI for currency and contraband. Buitrago testified that he instructed CI to place a call to the same number that he phoned on the 16th and CI placed the call in his presence. Buitrago testified that CI was released on the 1900 block of Carpenter

3

Street while he remained approximately 25-30 feet away and Graham was across the street from CI. Buitrago testified that he observed Defendant, wearing a black shirt and tan shorts, walk westbound on Carpenter Street towards 19th Street and approach CI. Buitrago further testified that the two had a brief conversation, after which CI handed Defendant the prerecorded buy money and received small objects from Defendant in return. Buitrago stated that CI returned to his location, at which time CI handed him two clear Ziploc packets containing a white chunky substance. Id. at 70-73.

Buitrago testified that he signaled to other members of the Narcotics Field Unit to arrest Defendant, at which point Graham and Officer Linwood Norman ("Norman") stopped and arrested Defendant. Buitrago stated that Graham searched Defendant and recovered one clear sandwich bag that contained seventeen clear Ziploc packets, each of which contained the same white chunky substance as the packets he received earlier from CI, from the front right pocket of Defendant's shorts. Buitrago further testified that Graham recovered a separate clear sandwich bag that contained a ball of the white chunky substance, unused packets, and a razor blade with white powder residue on it from the same pocket. Buitrago testified that Graham additionally recovered the prerecorded buy money, $57 in United States currency, and a cell phone bearing the same number that CI had called. Buitrago stated that he confirmed the cell phone's number by dialing it with his own phone, at which point the cell phone rang and showed Buitrago's number on the caller identification. Id. at 73-77.

The Commonwealth called Graham as its next witness. Graham testified that he had been assigned to the Narcotics Field Unit for approximately thirteen years, and had been a Philadelphia Police Officer for approximately eighteen years. Graham testified that, on August 16, 2011, he participated in a narcotics investigation in the area of 2400 Carpenter Street with his

4

partner, Buitrago. Graham testified that he observed Defendant and CI have a brief conversation, after which CI handed Defendant the prerecorded buy money in exchange for small objects. Graham testified that, on August 18, 2011, he and Buitrago again met with CI, at which time CI made a phone call and asked for two packets. Graham stated CI went to the 1900 block of Carpenter Street and Defendant approached CI on foot. Graham testified that he observed CI and Defendant have a conversation and then exchange the prerecorded buy money for small objects. Graham further testified that he was approximately 20 to 25 feet away from CI while he spoke with Defendant. Graham testified that CI returned to Buitrago's vehicle and Buitrago flicked the car's headlights, at which point he arrested Defendant. Graham further testified that he recovered one clear baggy containing 17 packets of alleged crack cocaine, another clear baggy containing numerous chunks of alleged crack cocaine, a razor blade with white residue on it, $57 in United States currency, the prerecorded buy money, and a cell phone from Defendant's person. Id. at 112-16.

The Commonwealth called Thomas Meehan ("Meehan") as its next witness. Meehan testified that he was a sergeant in the Narcotics Field Unit, that he participated in the investigation of Defendant in a supervisory role, and that he was present for Defendant's arrest. Meehan stated his role was to ensure that his officers followed the policies and protocols set forth by the Philadelphia Police Department. Meehan testified that he provided Buitrago and Graham with the prerecorded buy money they used in their investigation of Defendant. Meehan testified that, when an officer under his supervision used prerecorded buy money, he would have to authorize their use of the money and then, once provided with the money, the officer would make a photocopy of the money and mark the money they were given. Meehan stated that, when narcotics evidence is recovered, he would review and approve the paperwork the officers

submitted to him and he would ensure that all evidence was accounted for. Meehan testified that he reviewed the property receipts of the evidence recovered from Defendant on August 16, 2011 and August 18, 2011 and that he signed the receipts the same day they were submitted. Id. at 134-40.

There was a stipulation, by and between counsel, that if police chemist Phillip Sajju ("Sajju") was called to testify he would testify that he analyzed the two clear Ziploc packets that were purchased by CI on August 18, 2011. The packets had off-white chunks inside of them, and the chunks tested positive for Schedule II cocaine base. Sajju would further testify that he received an additional clear plastic bag containing 17 clear Ziploc packets with off-white chunks in them, that those chunks were analyzed and that they tested positive for Schedule II cocaine base. Sajju would further testify that he analyzed another clear plastic bag containing a chunk of an off-white substance, which tested positive for cocaine base. Sajju would testify that the razor was not analyzed for any narcotics. Id. at 148-49.

There was a further stipulation, by and between counsel, that, if police chemist Timothy Pelletier ("Pelletier") was called to testify, he would testify that he tested the two Ziploc packets containing off-white chunks that were purchased by CI on August 16, 2011 and that those two packets tested positive for cocaine base. Furthermore, both Sajju and Pelletier would testify that they were trained as police chemists, that they were certified by the Philadelphia Police Department, and that their conclusions were to a reasonable degree of scientific certainty. Id. at 150. After the stipulations, the Commonwealth rested. Id. at 152.

Defendant testified on his own behalf. Defendant stated that he did not remember what he did on August 16, 2011 but he believed he was at work at some point during that day. Defendant stated that he worked for Thomas Family Moving, a moving company owned by one

of his cousins. Defendant testified that, on August 18, 2011, he was at 1621 Christian Street with his cousin and that sometime between 1:30 p.m. to 2:00 p.m. on that day he called a female friend who lived nearby and walked to her house near the corner of 19th and Christian. Defendant testified that he stayed at his friend's house for approximately 45 minutes and the two of them watched television. Defendant testified that, after he left his friend's house, he decided to walk to his aunt's house at 23rd and Tasker Street. Defendant stated that he walked down 19th until he got to Carpenter Street, at which time he turned right towards 23rd. Defendant testified that he was on Carpenter Street when someone came up to him from behind and pushed him against a wall. Id. at 152-58.

Defendant testified that, once he was pushed against the wall, he saw that it was two black males who were holding him, although he could not identify either of them. Defendant stated that the two men repeatedly asked him, "Where the guns at?" and that, as the two men held him against the wall, three vehicles pulled up to the scene and more men approached him. Defendant testified that he recognized one of the men who approached him as Buitrago. Defendant further testified that Buitrago put his hands in Defendant's pockets and began to search him while asking him where the guns were. Defendant testified Buitrago then said "Oh, you got something," and pulled his hands away from Defendant in a cupping motion. Defendant testified that Buitrago had a Ziploc bag and some money in his hand. Defendant further testified he said to Buitrago, "Hold. That's not mine. I'm not going for that. You not going to do that to me," to which Buitrago replied, "We got you now." Defendant stated that he was not carrying any narcotics or a razor blade on him. Defendant testified that he did not interact with anyone else from the time he left his friend's house to when he was arrested. Defendant further testified that his phone number had a 570 area code, and he did not recognize the 267 number that CI

7

called. Defendant stated that it was possible he was in the area of Carpenter Street on August 16, 2011, because he lived in that neighborhood. Id. at 158-67. The defense rested after Defendant's testimony. Id. at 184.

## ISSUES

I. **WHETHER DEFENDANT IS ENTITLED TO A NEW TRIAL BASED UPON AFTER-DISCOVERED EVIDENCE.**

II. **WHETHER THE PROSECUTOR COMMITTED MISCONDUCT IN HIS CLOSING STATEMENT.**

III. **WHETHER THE COURT ERRED IN ALLOWING THE COMMONWEALTH TO USE A LETTER OF EMPLOYMENT DURING CROSS-EXAMINATION AND IN ALLOWING THE LETTER TO BE READ TO REFRESH THE JURY'S MEMORY DURING DELIBERATIONS.**

IV. **WHETHER THE COURT ERRED IN EXCLUDING EVIDENCE THAT POLICE OFFICERS IN A SEPARATE CASE INVOLVING DEFENDANT HAD BEEN INDICTED.**

V. **WHETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.**

## DISCUSSION

I. **DEFENDANT IS NOT ENTITLED TO A NEW TRIAL BASED UPON AFTER-DISCOVERED EVIDENCE.**

Defendant is not entitled to a new trial based upon after-discovered evidence. A trial court should grant a motion for new trial on the ground of after-discovered evidence where producible and admissible evidence discovered after trial (1) could not have been obtained prior to the end of trial with the exercise of reasonable diligence; (2) is not merely corroborative or cumulative evidence; (3) is not merely impeachment evidence; and (4) is of such a nature that its use will likely result in a different verdict on retrial. Commonwealth v. Trinidad, 2014 PA Super 78, 96 A.3d 1031, 1037 (quoting Commonwealth v. Lyons, 622 Pa. 91, 79 A.3d 1053, 1058

8

(2013)). Before granting a new trial, a court must assess whether the alleged after-discovered evidence is of such nature and character that it would likely compel a different verdict if a new trial is granted. Commonwealth v. Padillas, 2010 PA Super 108, 997 A.2d 356, 365 (2010) (citing Commonwealth v. Pagan, 597 Pa. 69, 106, 950 A.2d 270, 292 (2008)). In making that determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction. Id. (citing Commonwealth v. Parker, 494 Pa. 196, 200, 431 A.2d 216, 218 (1981)).

In the case at bar, Defendant filed a post-sentence motion for a new trial based upon after-discovered evidence as a result of Norman's subsequent federal indictment on corruption-related charges. However, Defendant is not entitled to a new trial based upon Norman's indictment as the nature and character of the evidence would not compel a different verdict if a new trial were granted. Contrary to Defendant's assertions, Norman's role in his arrest was *de minimis*. According to the testimony presented at trial, Norman was only one of multiple officers who were present at the scene when Defendant was arrested on August 18, 2011. He was not present on August 16, 2011 during the first purchase by the CI nor did he handle the CI on August 18, 2011. Moreover, Norman did not search Defendant or interact with him other than when he and Buitrago stopped Defendant, and he did not testify at Defendant's trial. Furthermore, there is no allegation that Buitrago or Graham were in any way involved with Norman's alleged activities or that they otherwise engaged in corruption. As the evidence of Defendant's guilt presented at trial was wholly derived from the investigation and testimony of Buitrago and Graham, and in no part derived any evidence provided by Norman, there is no indication that evidence of Norman's subsequent indictment would likely compel a different verdict. Therefore, Defendant is not entitled to a new trial based upon after-discovered evidence.

9

## II.    THE PROSECUTOR DID NOT COMMIT MISCONDUCT IN HIS CLOSING ARGUMENT.

The Commonwealth attorney did not commit prosecutorial misconduct during his closing statement when he repeatedly referred to himself as "a gladiator". In order to raise a claim of alleged prosecutorial misconduct, Defendant must object to the misconduct in a timely manner; otherwise such a claim will not be available on appellate review. Commonwealth v. Cox, 603 Pa. 223, 983 A.2d 666, 685 (2009). While a closing argument must be based upon evidence in the record or reasonable inferences therefrom, a prosecutor is permitted to respond to defense evidence and engage in oratorical flair. Commonwealth v. Culver, 2012 PA Super 172, 51 A.3d 886, 878 (2012) (citing Commonwealth v. Basemore, 525 Pa. 512, 582 A.2d 861, 869 (1990)). Allegedly improper remarks of a prosecutor during closing arguments must be viewed in the context of the closing argument as a whole. Commonwealth v. Smith, 604 Pa. 126, 985 A.2d 886, 907 (2009) (quoting Commonwealth v. Washington, 549 Pa. 12, 700 A.2d 400, 407-08 (1997)).

In defining what constitutes impermissible conduct during closing argument, Pennsylvania follows Section 5.8 of the American Bar Association (ABA) Standards. Section 5.8 provides: (a) the prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw; (b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant; (c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury; (d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the

10

consequences of the jury's verdict. Commonwealth v. Judy, 2009 PA Super 148, 978 A.2d 1015, 1019-20 (2009) (citing Commonwealth v. Sampson, 900 A.2d 887, 890 (Pa.Super. 2006)).

Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks. Commonwealth v. Burno, 96 A.3d 956, 974 (Pa. Super. 2014) (quoting Commonwealth v. Elliott, 80 .2d 415, 443 (Pa. 2013). If a challenged remark is made in response to the defense's closing argument, it will generally be deemed fair response and hence permissible comment. Commonwealth v. Keaton, 615 Pa. 675, 45 A.3d 1050, 1074-75 (2012) (citing Commonwealth v. Abu-Jamal, 553 Pa. 485, 720 A.2d 79, 110 (1998)). Furthermore, a prosecutor's comments do not constitute reversible error unless their unavoidable effect was to prejudice the jury, forming in their minds fixed bias and hostility towards the defendant so that they could not weigh the evidence objectively and render a true verdict. Id.

In the case at bar, the Commonwealth attorney made three references to himself as "a gladiator" and to the courtroom as "the coliseum" during his closing statement. Specifically, Mr. Harden stated,

> "Once you get in the coliseum with the Commonwealth, you have to bring it. If this is ancient Rome and we're in the coliseum, if you stay outside the coliseum, no judgment. But once you decide to step into this coliseum with a gladiator, I'm going to pick your story apart, my brother."

(N.T. 6/26/2013 p. 26). Shortly thereafter, Mr. Harden stated, "you went to the coliseum with a gladiator, my brother," and "you're in the coliseum with a gladiator, my brother." Id. at 27-28. However, defense counsel failed to object after any of these statements and therefore the claim that the Commonwealth attorney committed misconduct in his closing statement by repeatedly referring to himself as a gladiator was not properly preserved for appellate review.

11

Even if the claim was properly preserved for appellate review, the Commonwealth attorney did not engage in misconduct by referring to himself as a gladiator but was merely engaging in oratorical flair to respond to arguments made by the defense. In referring to himself as a gladiator and the courtroom as a coliseum, Mr. Harden was offering a metaphor for the adversarial process of a trial and his duty to respond accordingly to inconsistencies in the defense's arguments. Notably, Mr. Harden referred to himself as a gladiator after highlighting Defendant's inconsistent testimony regarding his employment status and his argument that Buitrago and Graham framed him. Furthermore, there is no indication that Mr. Harden's referrals to himself as a gladiator had the unavoidable effect of prejudicing the jury and forming in their minds a fixed bias and hostility towards Defendant so that they could not weigh the evidence objectively and render a true verdict. Thus, the Commonwealth attorney did not commit prosecutorial misconduct in his closing argument.

### III. THE COURT DID NOT ERR WHEN IT ALLOWED THE COMMONWEALTH TO USE A LETTER OF EMPLOYMENT DURING CROSS-EXAMINATION AND THEN ALLOWED THE LETTER TO BE READ TO REFRESH THE JURY'S MEMORY DURING DELIBERATIONS.

This Court did not err when it allowed a letter of employment from Old Country Buffet to be introduced during Defendant's cross-examination. Furthermore, this Court did not err when it allowed the letter to be read to the jury during deliberations. To preserve a claim for review, the defendant must make a timely and specific objection to the introduction of the challenged evidence at trial. Commonwealth v. Gray, 2005 PA Super 22, 867 A.2d 560, 574 (2005) (citing Commonwealth v. Freeman, 573 Pa. 532, 827 A.2d 385, 395 (2003)). A party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected. Commonwealth v. Strunk, 2008 PA Super 149, 953 A.2d 577, 579 (2008) (quoting

12

Commonwealth v. Clair, 458 Pa. 418, 326 A.2d 272, 274 (1974)). A Rule 1925(b) statement is not a substitute for the contemporaneous objection required at trial. Commonwealth v. Ali, 608 Pa. 71, 10 A.3d 282, 293 (2010).

Cross-examination may be employed to test a witness' story, to impeach credibility, and to establish a witness's motive for testifying. The scope of cross-examination is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. Commonwealth v. Ballard, 622 Pa. 177, 80 A.3d 380, 394 (2013) (citing Commonwealth v. Chmiel, 585 Pa. 547, 889 A.2d 501, 527 (2005)). An attorney is entitled to question the witness about subjects raised during direct examination as well as any facts tending to refute inferences arising from matters raised during direct testimony. Commonwealth v. Bricker, 2005 PA Super 307, 882 A.2d 1008, 1018-19 (2005) (citing Commonwealth v. Begley, 566 Pa. 239, 276–77, 780 A.2d 605, 627 (2001)). Similarly, an attorney may discredit a witness by cross-examining the witness about omissions or acts that are inconsistent with his testimony. Id.

When a jury requests that a portion of recorded testimony be read aloud to refresh its memory, the matter is within the trial court's discretion. Commonwealth v. Arrington, 86 A.3d 831, 848 (Pa.2014) (citing Commonwealth v. Peterman, 430 Pa. 627, 244 A.2d 723 (1968)). As long as there is not a flagrant abuse of discretion, this decision should not be overturned on appeal. Commonwealth v. Manley, 2009 PA Super 227, 985 A.2d 256, 173 (citing Commonwealth v. Gladden, 445 Pa.Super. 434, 665 A.2d 1201, 1205 (1995)). If the court grants the request and the review does not place undue emphasis on the witness's testimony, no reversible error is committed. Arrington, 86 A.3d at 848. In Manley, the Superior Court held that the trial court did not abuse its discretion when it allowed the contents of an exhibit to be read to the jury after the jury had requested that they be provided a physical copy of the exhibit. *See*

13

Manley, 985 A.2d at 272-73. In arriving at the conclusion, the Superior Court noted that the trial court had the discretion to both allow the jury to have an exhibit during deliberation and to have testimony read back to them during deliberations. Id.

In the case at bar, the Commonwealth cross-examined Defendant regarding a letter written by James Hargrove, manager at Old Country Buffet. The letter, which was dated September 2, 2011, stated that Defendant was presently employed at Old Country Buffet and had been employed there since July 2010. Defense counsel did not object to the Commonwealth reading the letter at the time. On June 10, 2013, the jury requested to see the letter. Defense counsel objected to the letter being read to the jury because it had not been moved into evidence or authenticated. The Commonwealth argued that reading the letter to the jury would not place improper weight on it, as the jury had determined it was important to assess Defendant's credibility. The Commonwealth further argued that reading the letter would aid the jury in making that determination. This Court allowed the letter to be read to the jury because it had been read to the jury during trial and it would assist the jury in reaching a verdict. (N.T. 6/10/2013 p. 4-11).

As defense counsel failed to object to the letter during cross-examination, the claim that the letter was improperly read during cross-examination was not properly preserved for appellate review. Even if the claim was preserved for appellate review, there was no error in allowing the letter to be read during cross-examination. Defendant testified that he was at work for Thomas Family Moving on August 16, 2011 and therefore could not have been on Carpenter Street selling drugs at that time. The letter, along with the biographical information Defendant gave to police at the Homicide Unit in which he stated he was unemployed, was therefore properly used by the Commonwealth to test Defendant's story and impeach his credibility. Moreover, this

14

Court did not abuse its discretion when it allowed the letter to be read to the jury during deliberations. The letter had been read previously in its entirety, was being used to refresh the jury's memory, and reading it once more did not place undue weight upon it, as the jury wanted assistance in their determination of Defendant's credibility. Therefore, this Court properly allowed the letter to be read to the jury during deliberations.

## IV. THE COURT DID NOT ERR WHEN IT EXCLUDED EVIDENCE THAT POLICE OFFICERS IN A SEPARATE CASE INVOLVING DEFENDANT HAD BEEN INDICTED.

This Court did not err when it excluded evidence that police officers in a separate case involving Defendant had been indicted. Generally, evidence is admissible if it is relevant, that is, "if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." Commonwealth v. Kinard, 2014 PA Super 41, 95 A.3d 279, 284 (2014) (quoting Commonwealth v. Williams, 586 Pa. 553, 896 A.2d 523, 539 (2006)). A trial court may exclude evidence that is irrelevant to the issues presented. Commonwealth v. Elliott, 622 Pa. 236, 80 A.3d 415, 446 (2013). The court may exclude relevant evidence if its probative value is outweighed by a danger of unfair prejudice. Pa.R.E. 403. Unfair prejudice supporting exclusion of relevant evidence means a tendency to suggest decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially. Commonwealth v. Wright, 599 Pa. 270, 961 A.2d 119, 151 (2008). Furthermore, evidence, although logically relevant on the ultimate issue, may nevertheless be excluded because its general effect on the trial will be to confuse the jury by distracting its attention away from the jury's primary concern to collateral issues. Commonwealth v. Jones, 2003 PA Super 220, 826 A.2d 900, 908 (2003) (citing Commonwealth v. Baez, 554 Pa. 66, 93, 720 A.2d 711, 724 (1998)).

15

In the case at bar, the Commonwealth made a motion in limine prior to the start of trial to preclude any mention by the defense that police officers Sydemy Joanis ("Joanis") and Jonathan Garcia ("Garcia") had been federally indicted. Joanis and Garcia previously had arrested Defendant a few months prior to his arrest in the instant case and were afterwards indicted for planting drugs and robbing drug dealers. The Commonwealth argued that this evidence was irrelevant because Joanis and Garcia had not been involved in any way in the instant matter and there were no allegations of corruption regarding Buitrago and Graham. The Commonwealth further argued that any relevance the evidence might have was outweighed by its prejudicial effect and the evidence would cause undue confusion, as the allegations did not involve the instant case. Defendant argued that the evidence should be allowed to support an inference that the entire Narcotics Field Unit in South Philadelphia was corrupt and could be used to impeach the credibility of the testifying officers from that unit. This Court granted the motion to preclude any mention of Joanis and Garcia. (N.T. 6/5/2013 p. 5-12).

This Court properly precluded any mention of Joanis and Garcia's indictments as the evidence was irrelevant to the case at bar. As Joanis and Garcia had no involvement whatsoever in the instant case, the evidence of their indictment therefore did not tend to establish a material fact in the case, to make a fact at issue more or less probable or support a reasonable inference or presumption regarding a material fact. Even if the evidence was relevant to the instant case, any relevance it may have had was greatly outweighed by the dangers of undue prejudice and confusion. As there was no allegations that Buitrago or Graham were involved in any corruption, the evidence would divert the jury's attention away from its duty of weighing the evidence impartially by distracting its attention from the jury's primary concern to collateral issues. Therefore, this Court properly excluded any evidence that Joanis and Garcia had been indicted.

16

## V.    THE VERDICT WAS NOT AGAINST THE WEIGHT OF THE EVIDENCE.

The verdict in this case was not against the weight of the evidence presented at trial. Under Pennsylvania law, a weight of the evidence claim concedes that the evidence was sufficient to sustain the verdict. Commonwealth v. Lyons, 622 Pa. 91, 79 A.3d 1053, 1067 (2013) (citing Commonwealth v. Widmer, 560 Pa. 308, 744 A.2d 745, 751-52 (2000)). The weight of the evidence is "exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Luster, 2013 PA Super 204, 71 A.3d 1029, 1049 (2013) (quoting Commonwealth v. Champney, 574 Pa. 435, 832 A.2d 403, 408 (2003)). In addition, "where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence...rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." Commonwealth v. Collins, 2013 PA Super 158, 70 A.3d 1245, 1251 (2013) (quoting Champney, 832 A.2d at 408). A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact-finder. Commonwealth v. Morales, 91 A.3d 80, 91 (Pa. 2014) (quoting Commonwealth v. Tharp, 574 Pa. 202, 830 A.2d 519, 528 (2003)). Rather, a new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Id.

In the case at bar, the jury heard testimony from Buitrago and Graham that they personally observed Defendant sell drugs to CI on two separate occasions. Buitrago testified that CI told the officers that there was a black male selling narcotics in the vicinity of the 2400 block

17

of Carpenter Street and provided them with a specific phone number that could be called to arrange a sale. Buitrago testified that CI called the phone number and a short time later Defendant appeared on the scene and exchanged packets containing a chunky, off-white substance for money with CI. Buitrago and Graham testified Defendant was arrested immediately after the second occasion, at which time he was searched and the police found cocaine and the prerecorded buy money that CI used to purchase the drugs on his person. Buitrago further testified that they found a phone on Defendant's person which matched the number dialed by CI to arrange the buy. The parties stipulated that chemists Sajju and Pelletier would testify that the substances purchased by CI from Defendant tested positive for cocaine and that the substance recovered from Defendant likewise testified positive for cocaine. Meehan testified that he supervised the investigation and that Buitrago and Graham had followed proper protocol during their investigation. The jury also heard testimony from Defendant that he was at work for Thomas Family Moving on August 16. However, the Commonwealth presented evidence that Defendant previously had told police that he was unemployed at the time and further claimed that he was employed at Old Country Buffet. Thus, the jury's verdict was not so contrary to the evidence that it shocked one's sense of justice. Therefore, the verdict was not against the weight of the evidence.

## CONCLUSION

After a review of the applicable rules of evidence, statutes, case law and testimony, this Court committed no error. Defendant is not entitled to a new trial based upon after-discovered evidence. The prosecutor did not commit misconduct in his closing statement. The Court did not err in allowing the Commonwealth to use a letter of employment during cross-examination of Defendant and in allowing the letter to be read to refresh the jury's memory during deliberations. The Court did not err when it excluded evidence that officers in a separate case involving Defendant had been indicted. The verdict was not against the weight of the evidence. Therefore, this Court's judgment of sentence should be upheld on appeal.

BY THE COURT:

_____ J.

19