J-A06001-24

2024 PA Super 188

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
DEANGELO ZIEGLAR : No. 515 WDA 2023

Appeal from the Order Entered April 5, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0002096-2022

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

OPINION BY LAZARUS, P.J.:                    **FILED: August 21, 2024**

The Commonwealth of Pennsylvania appeals from the order, entered in the Court of Common Pleas of Allegheny County, denying its request to impanel a death-qualified jury.  After careful review, we reverse and remand for further proceedings.

On January 19, 2022, police officers responded to a report of a shooting at the intersection of Lincoln and Sheridan Avenues in Pittsburgh.  Upon arrival, police encountered Rachel Dowden, who had been shot multiple times.  Dowden was transported to Allegheny General Hospital and was pronounced deceased at 9:18 p.m. that same day.  The ensuing police investigation revealed that Dowden had a final Protection from Abuse (PFA) order against Appellee Deangelo Zieglar.  On October 20, 2022, after additional investigation not relevant to this appeal, the Commonwealth charged Zieglar

with multiple offenses, including criminal homicide,[1] for the shooting death of Dowden.

As part of the pre-trial proceedings in this matter, the Commonwealth, on April 14, 2022, filed a Notice of Intention to Seek Death Penalty and Notice of Aggravating Circumstances Pursuant to Pa.R.Crim.P. 802[2] and 42 Pa.C.S.A. § 9711 (hereinafter, "Notice").  In its Notice, the Commonwealth set forth the following five aggravating circumstances/factors:

1.  The victim was a prosecution witness to a murder or other felony committed by [Zieglar] and was killed for the purpose of preventing [her] testimony against [Zieglar] in any grand jury or criminal proceeding involving such offenses.  42 Pa.C.S.[A.] § 9711(d)(5).

2.  [Zieglar] committed the killing while in the perpetration of a felony.  [*Id.* at] § [](d)(6).

3.  In the commission of the offense[, Zieglar] knowingly created a grave risk of death to another person in addition to [the] homicide victim.  [*Id.* at] § [](d)(7).

4.  [Zieglar] has a significant history of felony convictions involving the use or threat of violence to the [victim].  [*Id.* at] § [](d)(9).

5.  At the time of the killing, [Zieglar] was subject to a court order restricting in any way [his] behavior toward the victim pursuant to 23 Pa.C.S.[A.] Ch. 61 or any other order of a court of common

---

[1] 18 Pa.C.S.A. § 2501(a).

[2] Rule 802 requires that the Commonwealth notify the defendant, at the time of arraignment, of any aggravating circumstances the Commonwealth intends to submit at the capital sentencing hearing.  **See id.**  Additionally, Rule 802 requires the Commonwealth to list the specific aggravating circumstances as enumerated in section 9711 of the Sentencing Code.  **See id.**

pleas or of the minor judiciary designed in whole or in part to protect the victim from [Zieglar]. 42 Pa.C.S.[A.] § 9711(d)(18).

Notice, 4/14/22, at 1-2.

During one of many status conferences, the trial court indicated that it would *sua sponte* order a hearing,[3] at which it would require the Commonwealth to prove the aggravating factors set forth in its Notice. **See** Order and Opinion, 4/5/23, at 1-2 (detailing case's procedural history); Commonwealth's Motion to Reconsider, 10/31/22, at 1-5 (requesting trial court reconsider *sua sponte* decision to hold hearing on death penalty factors). The Commonwealth filed a motion to reconsider, to which, on November 2, 2022, the trial court ordered Zieglar file a response.

On November 6, 2022, Zieglar filed his response. **See** Defendant's Response to Commonwealth's Motion to Reconsider Order to Prove Aggravators of Death Penalty Notice, 11/6/22, at 1-5. In his response, Zieglar conceded that "under current law it is improper for this Honorable Court to challenge the Commonwealth's exercise of discretion in seeking the death penalty." **Id.** at 3. Additionally, Zieglar "raise[d] a claim that the Commonwealth [was] abusing its discretion in seeking the death penalty without providing, in evidence, a factual underpinning for each aggravating factor." **Id.** Ultimately, the trial court did not hold an evidentiary hearing after concluding that "absent a challenge put forth by [Zieglar]'s attorneys,

---

[3] We observe that this order, if it was ever written, does not appear in the certified record before this Court. However, it is clear from our review, based upon the citations **infra**, that the trial court did, in fact, order this hearing.

- 3 -

this [c]ourt has no authority to order such an evidentiary hearing." Order and Opinion, 4/5/23, at 4.

After pre-trial procedure not relevant to the instant appeal, the case proceeded to *voir dire*. On March 13, 2023, both parties filed their respective proposed *voir dire* questions. *See* Commonwealth's Proposed *Voir Dire* Questions: Death Penalty, 3/13/23, at 1-9 (unpaginated); Defendant's Proposed *Voir Dire* Questions, 3/13/23, at 4-20. The Commonwealth filed 34 proposed *voir dire* questions and Zieglar filed 70 proposed *voir dire* questions. Both parties' proposed questions pertained almost exclusively to the death penalty. *See* Trial Court Opinion, 6/28/23, at 4-5 (summarizing proposed *voir dire* questions). Additionally, we note that Zieglar did not oppose the Commonwealth's pursuit of the death penalty at this time.

On April 3, 2023, the trial court conducted a hearing on the parties' proposed *voir dire* questions. After argument, the trial court took the matter under advisement. On April 5, 2023, the trial court issued the following order:

> a) the 34 *voir dire* questions filed by the Commonwealth on March 13, 2023[,] will not be permitted to be used during jury selection in this case;
>
> b) the 70 questions filed by [Zieglar] on March 13, 2023, will not be permitted to be used during jury selection in this case;
>
> c) the jury selection in this case will be limited to determining the ability of each juror to be fair and impartial in deciding the verdict in this case; **there will be no deliberations as to sentence**;
>
> d) within the next 40 days, counsel for the Commonwealth and counsel for [Zieglar] may submit proposed *voir dire* questions

**which do not mention or refer to the death penalty as a possible sentence in this case**;

e) after the [c]ourt has received all re-submitted proposed *voir dire* questions, a status conference will be scheduled within 10 days, to address any outstanding discovery issues and jury selection procedures;

f) the scheduling times set forth above will be stayed should either party timely file a request for appellate review of this Order[.]

Order, 4/5/23, at 1-2 (emphasis added).

Additionally, the trial court attached an opinion explaining its reasoning for denying the proposed *voir dire* questions. **See** Opinion and Order, 4/5/23, at 1-10. In particular, the trial court considered that Governor Josh Shapiro had continued then-Governor Tom Wolf's moratorium on the death penalty[4] and found that the moratorium has made it functionally impossible for a jury to impose the death penalty. **See id.** at 3-9. Additionally, the trial court further concluded that, in light of the moratorium, it was compelled to act on behalf of the citizens of Allegheny County who may be called for jury duty, to prevent them from undergoing the harrowing ordeal of deciding whether a fellow citizen lives or dies where the Governor's stated refusal to sign a death warrant has effectively removed the decision from the jury. **See id.** at 6, 8-10.

On April 13, 2023, the Commonwealth filed a "Motion to Reconsider and Clarify," in which it argued that the trial court's order effectively prohibited

_____

[4] Governor Shapiro publicly stated that "when an execution warrant comes to my desk, I will sign a reprieve each and every time." Opinion and Order, 4/5/23, at 4 (quoting various news articles).

the Commonwealth from exercising its discretion to impanel a death-qualified jury. *See* Commonwealth's Motion to Reconsider and Clarify, 4/13/23, at 4-8. Additionally, the Commonwealth contended that the trial court's order was in direct conflict with prevailing case law because a trial court has no authority to challenge the Commonwealth's pursuit of the death penalty. *See id.* (citing ***Commonwealth v. Buck***, 709 A.2d 892, 896 (Pa. 1998) (Supreme Court recognizing prosecutor possesses initial discretion regarding whether to pursue death penalty); ***Commonwealth v. Buonopane***, 599 A.2d 681 (Pa. Super. 1991) (trial court's pre-trial determination that interfered with prosecutor's discretionary functions, absent threshold showing of valid claim of purposeful abuse, violated constitutional principle of separation of powers, and courts will not review executive branch actions involving exercises of discretion absent showing of bad faith, fraud, capricious action or abuse of power, "nor will they inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution")). Further, as part of its "Motion to Clarify," the Commonwealth requested that the trial court clarify whether it would "[]allow **any** jury to be selected and death[-]qualified at **any** stage of this case[.]" Motion to Reconsider and Clarify, 4/13/23, at 7 (unpaginated) (emphasis in original).

On April 13, 2023, the trial court ordered Zieglar to file a response to the Commonwealth's motion to reconsider. On April 18, 2023, Zieglar filed a response, in which he argued that the trial court was correct to preclude the impaneling of a capital jury because of the ongoing moratorium. ***See***

Defendant's Response to Commonwealth's Motion to Reconsider and Clarify, 4/18/23, at 1-8 (emphasis in original). Additionally, Zieglar contended that, just as the Commonwealth may death-qualify a jury, a defendant also has the right to life-qualify a jury. *See id.* at 3-4 (citing *Commonwealth v. Boxley*, 838 A.2d 608, 619 (Pa. 2003) ("During individual *voir dire*[,] a capital defendant is also permitted to ask life[-]qualifying questions."); *Morgan v. Illinois*, 504 U.S. 719, 733 (1992) (courts must not restrict *voir dire* in any way that limits defendant's "ability to exercise intelligently his complementary challenge for cause against those biased persons on the venire who as jurors would unwaveringly impose death after a finding of guilt"); *Wainwright v. Witt*, 469 U.S. 412, 423 (1985) ("The proper standard for determining whether a prospective juror may be excluded for cause because of his or her views on capital punishment . . . is whether the juror's views would prevent or substantially impair the performance of his duties as a juror.")). Zieglar argued that, considering then-Governor Wolf's death penalty moratorium, and now-Governor Shapiro's ongoing death penalty moratorium, "[Governor Shapiro] issued his statement with the intent that the citizens of Pennsylvania believe it and, hence, rely on it." *See* Defendant's Response to Commonwealth's Motion to Reconsider and Clarify, 4/18/23, at 4. Further, Zieglar claimed that

> [i]n light of the Governor's proclamation, no juror could reasonably believe that their decision in the sentencing phase [would have] any impact on whether or not [] Zieglar is actually executed. This directly undermines 'the truly awesome responsibility of decreeing death for a fellow human' that is

- 7 -

implicit within the idea of jury service and necessary under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

*Id.* at 4-6 (citing ***Caldwell v. Mississippi***, 472 U.S. 320 (1985)).[5]

On April 18, 2023, the trial court issued an order granting a hearing relative to the Commonwealth's Motion to Reconsider and Clarify and scheduling said hearing for April 24, 2023. **See** Order, 4/18/23, at 1. The trial court further directed that both parties be prepared to address all matters raised in the Commonwealth's motion, "including, but not limited [to,] whether the [c]ourt's order of April 5, 2023, is appealable." ***Id.***

On April 21, 2023, Zieglar filed a supplemental response to the Commonwealth's Motion to Reconsider and Clarify. **See** Defendant's Supplement to Defendant's Response to Commonwealth's Motion to Reconsider and Clarify, 4/21/23, at 1-4. In this supplement, Zieglar argued that, due to Governor Shapiro's ongoing moratorium, proceeding with *voir dire* to death-qualify a jury would unconstitutionally invade on the privacy rights of the citizens of Allegheny County. ***See id.*** Zieglar contended that the death-qualifying *voir dire* process is intensely invasive into personal matters for a purpose that may never come to fruition because of the ongoing moratorium. ***See id.***

---

[5] In ***Caldwell***, the United States Supreme Court held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." ***Id.*** at 328-29.

Ultimately, for reasons unclear from the record, the April 24, 2023 hearing was never held. Instead, on May 3, 2023, the Commonwealth filed the instant notice of appeal[6] from the trial court's April 5, 2023 order. On May 26, 2023, the Commonwealth filed a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

The Commonwealth now raises the following claims for our review:

1. Whether the trial court abused its discretion and/or committed an error of law by ignoring its duty under the [S]entencing [C]ode and the [R]ules of [C]riminal [P]rocedure to seat a death-qualified jury in a prosecution where the death penalty is sought?

2. Whether the trial court's refusal to permit the assembly of a death-qualified jury constitutes interference with the prosecutor's discretionary functions and violates the constitutional principle of separation of powers, which provides that no branch of government should exercise the functions exclusively committed to another branch?

Commonwealth's Brief, at 1.

Prior to addressing the Commonwealth's claims, we must *sua sponte* address our jurisdiction to hear this appeal. *See Commonwealth v. Kennedy*, 876 A.2d 939, 943 (Pa. 2005) (appellate courts lack jurisdiction over non-appealable order); *Commonwealth v. Jones*, 826 A.2d 900, 903 (Pa. Super. 2003) (en banc) (challenge to appellate court's authority to conduct review of pre-trial order is jurisdictional matter); *see also*

---

[6] On May 18, 2023, the Commonwealth filed an amended notice of appeal. The Commonwealth's amended notice of appeal included attachments of an amended affidavit with an updated list of transcripts. *See* Amended Notice of Appeal, 5/18/23, at 3 (unpaginated).

*Commonwealth v. Gaines*, 127 A.3d 15, 17 (Pa. Super. 2015) (en banc) ("We may raise issues concerning our appellate jurisdiction *sua sponte*.").

We must address whether the trial court's April 24, 2023 order properly granted reconsideration, which bears on whether this Court has jurisdiction over the instant appeal. Generally, when an appellant files a motion for reconsideration of a final order, they must file a protective notice of appeal to ensure preservation of their appellate rights if the court does not expressly grant reconsideration within the thirty-day appeal period prescribed under Pa.R.A.P. 903(a). *See Commonwealth v. Moir*, 766 A.2d 1253, 1254 (Pa. Super. 2000). In other words, the mere filing of a motion for reconsideration does not toll the thirty-day appeal period:

> It is well-settled that, upon the filing of a motion for reconsideration, a trial court's action in granting a rule to show cause and setting a hearing date is insufficient to toll the appeal period. Rather, the trial court must expressly grant reconsideration within thirty days of entry of its order. Failure to expressly grant reconsideration within the time set by the rules for filing an appeal will cause the trial court to lose its power to act on the application for reconsideration.

*Id.* (citations omitted).

Instantly, on April 18, 2024, within 30 days of its April 5, 2024 order, the trial court ordered "that a hearing relative to the Commonwealth's Motion to Reconsider and Clarify filed on April 13, 2023, is scheduled for April 24, 2023." Order, 4/18/23, at 1. Additionally, the trial court ordered that the parties be prepared to address, *inter alia*, "whether the [] April 5, 2023 [order] is appealable." *Id.*

We observe that the April 18, 2023 order was entered onto the docket as an "Order Granting Commonwealth Motion to Reconsider Order." Nevertheless, considering **Moir**, we conclude that this order is **not** an express grant of reconsideration, but rather a grant for a hearing at which the parties might argue their respective positions. **See Moir**, **supra**. In reaching this conclusion, we emphasize that the trial court did not vacate the April 5, 2023 order. **See Commonwealth v. Butler**, 566 A.2d 1206, 1211 (Pa. Super. 1989) (if trial court desires additional time to reexamine ruling, it must expressly grant reconsideration or vacate its order within thirty days). Further, one of the issues the trial court wished to address at the scheduled hearing on the Commonwealth's motion was whether the April 5, 2023 order was appealable. Therefore, we conclude that the Commonwealth's notice of appeal was timely filed as a protective notice of appeal to preserve its appellate rights. **See Moir**, **supra**.

Next, we observe that the case before us presents an issue of first impression. Consequently, there are no cases or rules discussing whether the Commonwealth may appeal as of right, pursuant to Pa.R.A.P. 311(d), from the trial court's order denying the proposed capital *voir dire* questions.

Rule 311(d) provides that "[i]n a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that **does not end the entire case** where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d). Typically, Rule 311(d) is "invoked in

- 11 -

appeals addressing the admission or exclusion of evidence." ***Commonwealth v. Woodard***, 136 A.3d 1003, 1005 (Pa. Super. 2016) (citation omitted); ***see also Commonwealth v. Jones***, 69 A.3d 180, 185 (Pa. 2013) (Commonwealth's appeal of suppression order proper where Commonwealth certifies in good faith that order substantially handicaps prosecution). Additionally, appellate courts have recognized the right of the Commonwealth to appeal several types of non-evidentiary pre-trial orders under Rule 311. ***See Woodard***, ***supra***; ***see also Jones***, 826 A.2d at 906 ("If the Commonwealth has no opportunity to obtain appellate review of an adverse pre-trial interlocutory order implicating double jeopardy concerns, such review will never occur because the Commonwealth cannot try a defendant for a second time if the first prosecution results in an acquittal."); ***Commonwealth v. Johnson***, 669 A.2d 315 (Pa. 1995) (order transferring case from criminal to juvenile court appealable under Rule 311); ***Buonopane***, ***supra*** (order precluding Commonwealth from seeking death penalty appealable as of right);[7]

Instantly, the Commonwealth included the requisite Rule 311(d) certification that the trial court's order has substantially handicapped or terminated its prosecution of the case. ***See*** Notice of Appeal – Certification, 5/9/23, at 1. In its certification, the Commonwealth stated that the trial

---

[7] The ***Buonopane*** decision predates the promulgation of Rule 311 and, consequently, does not address it. Nevertheless, ***Buonopane*** has been cited favorably in the Rule 311 context. ***See Woodard***, ***supra***.

court's order "preclud[ed] the impaneling of a death-qualified jury, substantially handicap[ping] the prosecution of [Zieglar] on the specified charges, as it annuls the trial court's duty in a first-degree murder trial to impanel such a jury [as specified in the Judicial Code.]" *See id.* (citing 42 Pa.C.S.A. § 9711(a)(1)).

In our view, the trial court's order effectively prohibits the Commonwealth from exercising its discretion to seek the death penalty and, therefore, the Commonwealth may properly appeal as of right pursuant to Rule 311(d). *See Buonopane*, *supra*; *Woodard*, *supra*. Indeed, to hold otherwise could impliedly permit the Commonwealth to seek relief under these circumstances post-conviction, which could violate our double jeopardy protections. *See Jones*, 826 A.2d at 906. Considering the foregoing, we conclude that the Commonwealth's appeal is properly before us.

In its first issue, the Commonwealth claims that the trial court violated the Sentencing Code when it refused to allow *voir dire* questions pertaining to the death penalty. *See* Commonwealth's Brief, at 6-23. The Commonwealth asserts that 42 Pa.C.S.A. § 9711(a)(1) and Pa.R.Crim.P. 802, 810, and 631(F), when read together, compel a trial court to conduct *voir dire* questioning when the Commonwealth has satisfied the aggravated factors requirements of Rule 802 and subsections 9711(a)(1) and (d). *See* Commonwealth's Brief, at 6-23. The Commonwealth further argues that it filed the requisite Rule 802 Notice and listed five aggravating factors, as required by law to exercise its discretion to seek the death penalty. *See id.*

- 13 -

Therefore, the Commonwealth contends that the trial court's refusal to allow *voir dire* questions pertaining to the death penalty constitutes an error of law where the relevant law compels the trial court to conduct *voir dire* on death penalty questions. *See id.* at 21-23. After review, we agree.

First, we must determine the applicable standard of review. We begin by observing that our Supreme Court has previously stated that a "prosecutor's decision to seek the death penalty is limited by the confines of [s]ection 9711[.]" *Commonwealth v. Chamberlain*, 30 A.3d 381, 425 (Pa. 2011). Indeed, our Supreme Court has reaffirmed that the legislature, pursuant to section 9711, has determined that the appropriateness of the death penalty is "solely a function of the jury."[8] *Buck*, 709 A.2d at 895-97 (citing and reaffirming *Com. ex rel. Fitzpatrick v. Bullock*, 370 A.2d 309 (Pa. 1977)).[9] In *Buck*, the Court held that section 9711 "continues to provide that the **jury shall act as the factfinder, weigh evidence of aggravating and mitigating circumstances**[,] **and determine the appropriate sentence in a capital case.**" *Buck*, 709 A.2d at 896 (citing 42 Pa.C.S.A. §§

---

[8] We note that, under Pennsylvania law, a capital defendant may waive the impaneling of a jury for the sentencing phase. *See* 42 Pa.C.S.A. § 9711(b) (providing capital defendant may waive impaneling of capital jury, in which case trial court shall hear evidence and determine penalty).

[9] In *Bullock*, our Supreme Court interpreted a previous version of the Sentencing Code and determined that a trial court may not prevent the Commonwealth from seeking the death penalty where the Commonwealth has met the statutory requirements. *See Bullock*, 370 A.2d at 313-14. Further, the Court concluded that the appropriateness of the death penalty was solely for the jury to determine, as prescribed by the legislature. *See id.*

9711(a)(1), (c)(1)(iv), (f)(1), and (g)) (emphasis added). Additionally, the Court acknowledged that the only notable difference in section 9711, following **Bullock**, is that the Commonwealth is now required to provide notice of its intent to seek the death penalty at, or prior to, arraignment. **See Buck**, 709 A.2d at 896.

Further, "the prosecutor possesses the initial discretion regarding whether to seek the death penalty in a murder prosecution." **Id.** (citing **Commonwealth v. DeHart**, 516 A.2d 656 (Pa. 1986)). This Court has made clear it is the **prosecutor's** discretion, not that of the trial court. **See Buonopane**, **supra** (trial court has no authority to review prosecutor's alleged aggravating factors pre-trial).

Moreover, we observe that, where the legislature has granted the prosecutor discretionary powers, the trial court may review those powers only if the legislature has expressly granted the court authority to review them. **See id.** at 684; **see also Bullock**, **supra** (absent pertinent statute empowering trial court to review pre-trial procedure, there was no authority for such action); **see also Commonwealth v. Johnson**, 487 A.2d 1320 (Pa. 1985) (interpreting 42 Pa.C.S.A. § 5947 and determining where legislature granted district attorney sole discretion over immunity, trial court had no discretion or authority to deny prosecutor's request for grant of immunity).

Our review of the foregoing leads us to the inevitable conclusion that whether a trial court may deny a prosecutor's ability to seek the death penalty is a question of law, for which our standard of review is *de novo*, and our

scope of review is plenary. ***See In re Wilson***, 879 A.2d 199, 214 (Pa. Super. 2005) ("As with all questions of law, the appellate standard of review is *de novo*, and the appellate scope of review is plenary.").

Regarding the process of *voir dire* for capital juries, we provide the following backdrop from our Rules of Criminal Procedure, which provide, in relevant parts, as follows:

**Notice of Aggravating Circumstances**

The attorney for the Commonwealth shall file a Notice of Aggravating Circumstances that the Commonwealth **intends to submit at the sentencing hearing** and contemporaneously provide the defendant with a copy of such Notice of Aggravating Circumstances. Notice shall be filed at or before the time of arraignment, unless the attorney for the Commonwealth becomes aware of the existence of an aggravating circumstance after arraignment or the time for filing is extended by the court for cause shown.

*Comment*: This rule provides for pre-trial disclosure of those aggravating circumstances that the Commonwealth intends to prove at the sentencing hearing. ***See*** Sentencing Code, 42 Pa.C.S.A. § 9711(d).

Pa.R.Crim.P. 802 & Cmt. (emphasis added).

**Sentence**

In all cases in which a verdict of murder of the first degree has been returned, once a sentence has been determined, the court may immediately impose that sentence.

Pa.R.Crim.P. 810.

**Examinations and Challenges of Trial Jurors**

(A) *Voir dire* of prospective trial jurors and prospective alternate jurors **shall** be conducted, and the jurors **shall** be selected, in the presence of a judge, unless the judge's presence is waived by the

attorney for the Commonwealth, the defense attorney, and the defendant, with the judge's consent.

* * *

(C) Upon completion of the oath, the judge **shall instruct the prospective jurors upon their duties and restrictions while serving as jurors**, and of any sanctions for violation of those duties and restrictions, including those provided in [Pa.R.Crim.P.] 626(C) and [] 627.

* * *

(F) In capital cases, the individual *voir dire* method must be used, unless the defendant waives that alternative[.]

　　(1) *Individual Voir Dire and Challenge System*

　　　　(a) *Voir dire* of prospective jurors shall be conducted individually and may be conducted beyond the hearing and presence of other jurors.

　　　　(b) Challenges, both peremptory and for cause, shall be exercised alternately, beginning with the attorney for the Commonwealth, until all jurors are chosen. Challenges shall be exercised immediately after the prospective juror is examined. Once accepted by all parties, a prospective juror shall not be removed by peremptory challenge. Without declaring a mistrial, a judge may allow a challenge for cause at any time before the jury begins to deliberate, provided sufficient alternates have been selected, or the defendant consents to be tried by a jury of fewer than 12, pursuant to Rule 641.

* * *

*Comment*: This rule applies to **all cases**, regardless of potential sentence. . . .

If Alternative (F)(1) is used, examination continues until all peremptory challenges are exhausted or until 12 jurors and 2 alternates are accepted. Challenges must be exercised after the prospective juror is questioned. **In capital cases, only**

- 17 -

**Alternative (F)(1) may be used** unless affirmatively waived by all defendants and the Commonwealth, with the approval of the trial judge.

Pa.R.Crim.P. 631(A), (C), (F) & Cmt. (emphasis added).

Additionally, the Sentencing Code provides:

**§ 9711.   Sentencing procedure for murder of the first degree**

**(a) Procedure in jury trials.--**

(1) After a verdict of murder of the first degree is recorded and before the jury is discharged, the court **shall** conduct a separate sentencing hearing in which the jury **shall** determine whether the defendant **shall** be sentenced to death or life imprisonment.

* * *

**(c) Instructions to jury.--**

(1) Before the jury retires to consider the sentencing verdict, the court **shall** instruct the jury on the following matters:

(i) The aggravating circumstances specified in subsection (d) as to which there is some evidence.

(ii) The mitigating circumstances specified in subsection (e) as to which there is some evidence.

(iii) Aggravating circumstances must be proved by the Commonwealth beyond a reasonable doubt; mitigating circumstances must be proved by the defendant by a preponderance of the evidence.

(iv) The verdict **must** be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in

- 18 -

subsection (d) and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict **must** be a sentence of life imprisonment in all other cases.

(v) The court may, in its discretion, discharge the jury if it is of the opinion that further deliberation will not result in a unanimous agreement as to the sentence, in which case the court **shall** sentence the defendant to life imprisonment.

(2) The court **shall** instruct the jury that if it finds at least one aggravating circumstance and at least one mitigating circumstance, it **shall** consider, in weighing the aggravating and mitigating circumstances, any evidence presented about the victim and about the impact of the murder on the victim's family. The court **shall** also instruct the jury on any other matter that may be just and proper under the circumstances.

(d) **Aggravating circumstances.--** Aggravating circumstances shall be limited to the following:

* * *

(5) The victim was a prosecution witness to a murder or other felony committed by the defendant and was killed for the purpose of preventing his testimony against the defendant in any grand jury or criminal proceeding involving such offenses.

(6) The defendant committed a killing while in the perpetration of a felony.

(7) In the commission of the offense[,] the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense.

* * *

(9) The defendant has a significant history of felony convictions involving the use or threat of violence to the person.

\* \* \*

(18) At the time of the killing[,] the defendant was subject to a court order restricting in any way the defendant's behavior toward the victim pursuant to 23 Pa.C.S.[A.] Ch. 61 (relating to protection from abuse) or any other order of a court of common pleas or of the minor judiciary designed in whole or in part to protect the victim from the defendant.

\* \* \*

(f) Sentencing verdict by the jury.--

(1) After hearing all the evidence and receiving the instructions from the court, the jury **shall** deliberate and render a sentencing verdict.

42 Pa.C.S.A. §§ 9711(a)(1), (c)(1)-(2), (d)-(f)(1) (emphasis added).

In sum, the above rules and statute require that, to seek the death penalty, the Commonwealth shall file a compliant notice at or before the time of the arraignment. *See* Pa.R.Crim.P. 802. The Commonwealth's notice shall contain at least one aggravating factor pursuant to section 9711(d). *See* Pa.R.Crim.P. 802; 42 Pa.C.S.A. § 9711(d). Additionally, the trial court and the parties shall use the "Individual *Voir Dire* and Challenge System" set forth in Rule 631. *See* Pa.R.Crim.P. 631(F)(1), Cmt. Further, if the defendant is found guilty, the **same jury shall** sentence the defendant to either death or life imprisonment. *See* Pa.R.Crim.P. 810; 42 Pa.C.S.A. §§ 9711(a), (f); *see also Commonwealth v. Mattison*, 82 A.3d 386 (Pa. 2013) (reiterating section 9711 requires "the same jury which renders the verdict of murder in

the first degree is the same jury which is to determine whether the sentence is to be death or life imprisonment").

We further observe that there is nothing in section 9711, or any other law that we are aware of, that allows the trial court to deny the Commonwealth's ability to seek the death penalty. ***See Bullock***, ***supra***; ***see also Buonopane***, ***supra***. Indeed, as we stated ***supra***, our Supreme Court has held that the current version of section 9711 continues to provide that the **jury** is the sole factfinder and arbiter of death in a capital case. ***See Buck***, ***supra***.

Instantly, the trial court has denied the Commonwealth's ability to pursue the death penalty.[10] ***See*** Order, 4/5/23, at 1-2. The Commonwealth filed the requisite Notice and invoked five of the section 9711(d) aggravating factors. Thus, as a matter of law, the parties and trial court were required to use the Individual *Voir Dire* and Challenge System, pursuant to Rule 631(F)(1), to death- and life-qualify the jury.[11] ***See*** Pa.R.Crim.P. 802; 42

_____

[10] We note that, although Zieglar's November 6, 2022 response requested the factual underpinnings of the aggravated factors listed in the Commonwealth's Notice, Zieglar has not formally challenged the Notice itself. ***See*** Trial Court Opinion, 6/28/23, at 4 (concluding Zieglar has failed to formally challenge Commonwealth's Notice). Consequently, Zieglar's request for factual underpinnings does not change our analysis.

[11] In our review of the foregoing, we conclude that, under these circumstances, it is statutorily mandated that the jury be both "death-qualified" and "life-qualified." "Death qualification" is the process by which counsel or the court identifies and excludes prospective jurors who stated that "they would not under any circumstances vote for the death penalty." *(Footnote Continued Next Page)*

- 21 -

Pa.C.S.A. § 9711(d); Pa.R.Crim.P. 631(F); Pa.R.Crim.P. 810. Because the trial court denied **all** *voir dire* questions relating to death and life qualification, denied the parties the ability to death or life-qualify the jury, and expressly stated "there will be no jury deliberations as to sentence," the trial court has usurped the Commonwealth's authority to seek the death penalty. *See* Order, 4/5/23, at 1-2.

As our review reveals, the trial court has acted outside the parameters of the law. *See* 42 Pa.C.S.A. § 9711(a), (d); *see also Bullock*, *supra*. The legislature has not granted trial courts the authority to intrude into the Commonwealth's exercise of discretion in this realm and, consequently, we reaffirm that a trial court cannot exercise authority over the Commonwealth's discretion to seek the death penalty pre-trial, even where the Governor has imposed a moratorium on imposition of the death penalty.[12] *See Bullock*,

---

*Commonwealth v. Colson*, 490 A.2d 811, 817 (Pa. 1985). "Life qualification," on the other hand, refers to the process by which counsel or the court identifies and excludes prospective jurors who have a fixed opinion that a sentence of death should always be imposed for a conviction of first-degree murder. *See Commonwealth v. Keaton*, 729 A.2d 529, 542 n.9 (Pa. 1999). To conclude otherwise would permit a trial court to unlawfully reject the Commonwealth's authority to seek the death penalty.

[12] In light of our disposition, we need not address the Commonwealth's second claim pertaining to separation of powers. *See Commonwealth v. Humphrey*, 283 A.3d 275, 295 n.21 (Pa. 2022) (declining to address constitutional questions where issue had been resolved on statutory grounds); *see also In re Fiori*, 673 A.2d 905, 909 (Pa. 1996) ("sound tenet of jurisprudence that courts should avoid constitutional issues when the issue at hand may be decided upon other grounds").

***supra***; ***Johnson***, ***supra***.  Accordingly, we reverse the trial court's order and

remand for further proceedings.[13]

_____

[13] Furthermore, we observe that the trial court relies upon ***Caldwell*** for the premise that it is unable to impanel a death jury.  The trial court contends that the moratorium, imposed by Governor Shapiro as the chief executive of the Commonwealth, removes the decision regarding the death sentence from every potential juror in violation of ***Caldwell***.  ***See*** Trial Court Opinion, 6/28/23, at 9, 18-21.  Additionally, the trial court determined that, in light of the conflict between Governor Shapiro's moratorium and ***Caldwell***, it would be impossible to appoint a jury that could properly consider the death penalty.

We find this rationale to be premature.  First, the citizens of this Commonwealth are not presumptively aware of Governor Shapiro's moratorium.  Furthermore, even if potential jurors **were aware**, then the proper forum to discover that alleged taint would be **at *voir dire***.  Here, as we discussed, the trial court's order prevents the parties from engaging in *voir dire* proceedings related to the death penalty, which would make it impossible to discern whether any taint exists or what effect, if any, it may have on potential jurors.  Thus, the record before us is underdeveloped for review of this argument.

We further observe that Governor Shapiro's moratorium is temporary in nature.  Under the laws of this Commonwealth, Governor Shapiro will not hold his position in perpetuity and, thus, we cannot agree that the moratorium will presumptively taint potential jurors in making the difficult determination of death versus life.  Furthermore, we note that Governor Shapiro stated that he was "granting a reprieve," not a pardon or commutation of sentence.  ***See Commonwealth v. Williams***, 129 A.3d 1199, 1217 (Pa. 2015) ("reprieve as set forth in Article IV, Section 9(a) means the **temporary suspension of the execution of a sentence**") (emphasis added, quotation marks omitted).  Consequently, any reprieve granted by Governor Shapiro does not remove the decision of death from the jury, but merely delays the implementation of any such decision.  Moreover, despite Governor Shapiro's moratorium, the Commonwealth's ability to pursue the death penalty is still the law.  ***See*** 42 Pa.C.S.A. § 9711.

Finally, we presume that our legislature is aware of Governor Shapiro's moratorium, just as the legislature was aware of then-Governor Wolf's moratorium.  Nevertheless, the legislature has not amended our death penalty
*(Footnote Continued Next Page)*

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 08/21/2024

---

laws.  Additionally, neither our Supreme Court nor the United States Supreme Court has declared the death penalty to be unconstitutional.  Consequently, unless and until either the law changes or the death penalty is determined to be unconstitutional, this Court cannot affirm the trial court's order and we consider the **Caldwell** argument to be unpersuasive and premature.